OPINION OF THE COURT
Sheldon S. Levy, J.
What is the proper scope of cross-examination when a defendant testifies at a Huntley hearing? More specifically, if a defendant seeks to suppress incriminating statements only on the ground that the right to counsel has been violated, can the prosecutor ask questions concerning the truth of those statements or with respect to guilt of the crimes charged?
Curiously, although numerous Huntley hearings are conducted daily throughout the State, no reported case has detailed the legal and practical perimeters of cross-interrogation applicable to these and similar hearings.
Defendant, Eric Blackwell, accused of stealing a wallet and possessing five stolen credit cards, was indicted for grand larceny in the third degree and possession of stolen property in the second degree. The pertinent facts elicited at the Huntley hearing are readily set forth.
On January 22, 1985, at the Times Square IRT subway station, Police Officer Joseph Schweiger arrested defendant for taking a woman’s wallet out of her pocketbook. Upon having Miranda warnings read to him, defendant made an incriminating statement and was thereafter escorted to a nearby police *600 substation. There, Officer Schweiger searched the defendant and found, secreted in various places on his person, several credit cards in different names. The officer then gave defendant his Miranda rights once more, and defendant made additional admissions.
On cross-examination of Officer Schweiger, defense counsel asked him if he had found defendant’s wallet when he searched him and if he had noticed in the wallet a Legal Aid Society calling card with the notation of a court date subsequent to January 22, 1985. Officer Schweiger remembered the wallet, but denied seeing any Legal Aid card therein.
At the conclusion of the People’s case, defense counsel stated that his client wished to testify regarding a Legal Aid card that was in his wallet at the time of his arrest. The attorney, however, requested an in limine ruling from the court that questions by the prosecutor be strictly confined to the issue of what was in the defendant’s wallet at the time of arrest and that the People be allowed no other areas of cross-examination. The Assistant District Attorney opposed the application, arguing that his interrogation of defendant should not be limited in any manner; should be as broad as at trial; and should include inquiry as to details of the crimes charged and the truth of the statements made.
In this court’s view, however, the fair and proper standard to be applied in these and similar circumstances lies between the asserted positions of the respective parties. The resolution of the issue also necessitates a new look at the permissible scope of cross-examination, especially at pretrial suppression hearings.
In civil matters, although it is within the trial judge’s sound discretion to enlarge the allowable areas of cross-examination, such questioning is generally limited to matters testified to on direct examination (Matter of Friedel v Board of Regents, 296 NY 347; Provo v Morehouse, 12 AD2d 668). In criminal proceedings, however, it is well settled, but oftentimes misunderstood, that a party may prove through cross-examination any relevant proposition, regardless of the scope of the direct testimony (People v Kennedy, 70 AD2d 181,186). It is this broader criminal standard, with specified modifications, that governs cross-examination at suppression hearings preliminary to trial.
At any suppression proceeding, no matter what the substance of a testifying defendant’s direct examination is, the defendant is seeking to have the trier of facts believe the proffered evidence. By such sworn testimony, the defendant is setting forth one or more affirmative propositions that, if given credence, will *601 be of material aid to defendant’s cause. Clearly, the defendant, at a minimum, is putting credibility in issue.
On this basis alone, the People are entitled to cross-examine the defendant fully as to all aspects of those factual issues raised by the direct proof.
In addition, the prosecution must also be permitted to employ those normal means of impeachment which are standard implements in the arsenal of attack upon the believability of any witness. In this regard, a defendant who testifies in support of a motion to suppress statements may be interrogated with respect to prior convictions and bad acts to the extent that such information may assist in evaluating credibility as a witness. This type of cross-examination is little different from cross-examination at trial. Indeed, it may well be even broader because, in the absence of the jury, its scope need not be restricted by Sandoval considerations (see, People v Lombardi, 76 AD2d 891) or “compromises” (see, People v Handly, 96 AD2d 649; People v Bermudez, 98 Misc 2d 704, affd 84 AD2d 968).
Moreover, if a District Attorney chooses to do so, a defendant can be cross-examined concerning alternate theories under which the evidence that is the subject of the hearing might be admissible. For example, even when the right to counsel has attached, statements that have been genuinely volunteered and have not been made as a product of police interrogation, inducement or encouragement may be introduced at trial (People v Maerling, 46 NY2d 289, 302-303; People v Kaye, 25 NY2d 139). Thus, a prosecutor may pose questions as to the spontaneity of a defendant’s statements even if the testimony on direct examination involved only the claim of a prior and subsisting representation by counsel.
Nevertheless, the People should not be permitted to cross-examine a testifying defendant concerning matters which are not pertinent to the main issues of the hearing. In point of fact, relevance is the key concept and the primary controlling factor. At a Huntley hearing, except when the issue of probable cause has been raised, interrogation concerning the truth of a defendant’s alleged statements or guilt of the crime charged, which often encompasses the same general area, is forbidden. The reasons for this are both fair and practical. Simply stated, such considerations are irrelevant to the usual issues to be resolved; namely, the voluntariness of the defendant’s statements; the existence of a right to counsel; or both.
Admittedly, there can be no dispute that questions about the charged crime or the veracity of alleged statements may some *602 times be useful for credibility testing and that credibility of a witness is always a relevant area of inquiry. Nevertheless, a defendant who takes the stand at a Huntley hearing and intends to testify only with respect to matters which are of special significance to the attempt to suppress statements allegedly made may well be deterred from doing so if there will be cross-examination as to the precise alleged criminal acts which are the subject of the prospective trial. Yet, in most cases, the defendant will be the only viable witness with respect to these Huntley issues.
Therefore, it is more important that a defendant be allowed to testify freely about the particular issues of the Huntley hearing than to permit unlimited credibility examination. The possible impeachment value of answers to otherwise irrelevant questions must be subordinated to the public policy of permitting the defendant to testify.
However, a single exception to the rule prohibiting cross-interrogation about the facts of the crime and the truth of statements occurs when a defendant on direct testimony opens the door and affirmatively states, or even implies, innocence (see, People v Huntley, 46 Misc 2d 209, 212, affd 27 AD2d 904, affd 21 NY2d 659). In the Huntley case (indeed, the legendary Charles Huntley from whom the hearing name derives), the defendant testified that he had told the police that he did not know anything about the subject robbery, but that after the police threatened to beat him, he confessed. Under these circumstances, because the defendant had suggested that he was innocent and that he had confessed only under duress, interrogation by the prosecutor about the defendant’s guilt or lack of guilt was held to be reasonable and proper.
Applying the foregoing principles to the instant case and to defendant’s conditional offer of proof, although the defendant here is the only knowledgeable person that he could call as a witness in his own behalf, the scope of the People’s cross-examination must necessarily be allowed to include any relevant area of inquiry and any recognized means of impeachment.
It is obvious, however, that the facts of the crimes charged and the truth of the statements allegedly made are neither a relevant nor a necessary arena for a credibility assault, unless, of course, the testifying defendant heralds them or proclaims innocence.
Specifically, the defendant may testify concerning the contents of his wallet at the time of arrest and his representation by counsel, but he cannot foreclose any legitimate cross-inquiry *603 relating thereto; to possible alternative theories for admission of the subject statements; or to the usual grounds for impeachment, including any past criminal, immoral or vicious conduct. On the other hand, the People will not be allowed to interrogate defendant concerning the alleged wallet theft; the claimed possession of stolen credit cards; or the truth of defendant’s supposed admissions (see, People v Lacy, 25 AD2d 788).
Finally, although the guidelines aforesaid have been set forth primarily in terms of the instant Huntley proceeding, they would seem to apply to other types of pretrial suppression hearings as well. Thus, at a Wade hearing, a defendant who testified about the suggestiveness of an identification procedure could not be cross-examined about the crime itself, unless, of course, innocence was asserted during the direct examination. Similarly, at certain Mapp hearings, where, for example, the issue is whether the defendant consented to the search, a defendant could testify in relation thereto without the specter of interrogation concerning guilt.
Where, however, one of the questions to be decided at any suppression hearing is the existence of probable cause to arrest or reasonable suspicion to search, it is more likely that any testimony given by the defendant would actually bear directly on guilt or nonguilt. In such instances, cross-examination could properly encompass further interrogation about the facts of the case and defendant’s supposed involvement in the crime, as well as the truth of any statements concerning these issues.
Parenthetically, it should be noted that 5th Amendment considerations regarding a defendant’s decision to take the stand at any pretrial suppression hearing need not occasion immediate concern. Such testimony will not constitute a waiver of the self-incrimination privilege at any subsequent trial. Only if a defendant testifies at a succeeding trial will his sworn hearing testimony be admissible for impeachment purposes (see, People v Huntley, supra, at pp 212-213).
Accordingly, and for all of the reasons stated, should the defendant here decide to testify at the pending Huntley hearing, he will be subject to cross-examination to the extent indicated.