[769 NYS2d 14]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CEDRIC DARRETT, Appellant.

First Department, December 4, 2003

**APPEARANCES OF COUNSEL**

*Robert M. Morgenthau, District Attorney*, New York City (*David M. Cohn* and *Mark Dwyer* of counsel), for respondent.

*Robert S. Dean, Center for Appellate Litigation (Jan Hoth* of counsel), for appellant.

**OPINION OF THE COURT**

MARLOW, J.

In this first-degree murder case we address two issues related to defendant's *Huntley* hearing, viz. (1) whether the prosecutor

properly questioned defendant about the truth of contradictory out-of-court statements—one exculpatory and two inculpatory; and (2) whether defense counsel's expressed concern to the court that defendant might commit perjury at the *Huntley* hearing, together with the trial court's incorrectly expressed statement at sentencing, that defendant *had* committed perjury at the *Huntley* hearing, demonstrates that defendant had been deprived of a fair hearing. We answer both questions in the affirmative, hold this appeal in abeyance, and remand the matter for a new *Huntley* hearing.[1]

Defendant also asserts, as a threshold matter, that his indictment should be dismissed because he was deprived of a meaningful opportunity to testify before the grand jury. However, we find this contention meritless.

## Grand Jury

Defendant and his codefendant Darryl Powell were indicted for the murder of Freddy Pina. The People alleged that on September 10, 1997, Powell, who is defendant's brother-in-law, offered defendant $2,000 to murder Pina.[2]

At defendant's arraignment on September 12, 1997, he served written notice of his intent to testify before the grand jury. Defendant's case was calendared for Tuesday, September 16, to allow the People to meet their CPL 180.80 obligation. Codefendant's case was calendared for CPL 180.80 purposes on Wednesday, September 17.[3]

On Monday, September 15, defense counsel, without offering a specific reason, asked the People to postpone the grand jury presentation for one week. The prosecutor refused, but, upon application, the court granted defendant a 24-hour extension. The prosecutor indicated that he would be presenting his witnesses later that afternoon or the next morning, but that a vote would not be taken as to defendant until he had decided whether to testify. Defense counsel had been made aware that there would be a joint grand jury presentation as to both defendants.

---

1. In light of our determination, it would be premature, at this juncture, to consider defendant's final contention that New York's sentencing scheme for first degree murder is unconstitutional.

2. Codefendant Darryl Powell was tried separately, found guilty of murder in the first degree, and sentenced to life in prison without parole. His conviction was recently affirmed by this Court (304 AD2d 410 [2003]).

3. The different deadline dates resulted from differing times of arrest.

The case against both defendant and his codefendant was presented to the grand jury on Tuesday, September 16. The prosecutor instructed the grand jurors to consider the charges against each defendant separately and to vote only as to the codefendant. The prosecutor further explained that the vote against defendant was to be left open until the following day for the possibility of additional evidence.

On Wednesday morning, defense counsel left a message for the prosecutor that defendant would testify that afternoon. However, upon learning that the codefendant had been indicted, counsel requested that defendant's case be re-presented to another grand jury, arguing that the current grand jury, by having indicted the codefendant, had already committed itself to the contract killing theory. The court denied the application. Consequently, defendant withdrew his notice to testify and was indicted on September 18, 1997.

Although an individual who gives timely notice prior to the People's presentation of evidence before a grand jury is entitled to testify before the grand jury vote (*see People v Evans*, 79 NY2d 407 [1992]), that person does not have "a right to be informed of the manner in which a Grand Jury presentment will be made" (*People v Adessa*, 89 NY2d 677, 683 [1997] [citation omitted]). Indeed, an individual's right in this regard is limited to the right to testify on one's own behalf (CPL 190.50 [5] [a]). Thus, "[a]bsent a breach of a statutory command or some indication of likely prejudice, there is no legal basis for interfering with the prosecutor's prerogatives in determining the manner in which a Grand Jury presentment is made" (*Adessa*, 89 NY2d at 682).

Defendant's reliance on *People v Evans* (79 NY2d 407 [1992]) is misplaced. There, the defendants gave timely notice, but the Department of Correction failed to transport them to the grand jury. Notwithstanding, the People called for a vote before the Department produced them in order to avoid the CPL 180.80 deadline. Consequently, the Court held that their statutory right to appear was not satisfied when the People subsequently offered them the opportunity to testify in front of the same grand jury after it had voted, but before the indictment was filed. The *Evans* Court specifically noted that "[b]y providing timely notice reasonably prior to Grand Jury presentment and vote, defendants establish their statutory right to testify before a vote is taken, *assuming, of course, that any failure to afford these individuals a prevote appearance is not attributable to defendants themselves*" (79 NY2d at 415 [emphasis added]).

Here, in stark contrast, defendant affirmatively requested the prosecutor to postpone the grand jury presentation. Moreover, the People were put in the untenable position of having to release the codefendant, who had not served a grand jury notice or waived his right to be released on the CPL 180.80 deadline date (*see People v Johnson*, 168 Misc 2d 798, 801 [1996] [defendant waived release on CPL 180.80 day, but codefendant did not]). Consequently, and in light of the particular circumstances of this case: viz. (1) defendant's affirmative request to adjourn his CPL 180.80 deadline in a case counsel knew was being presented jointly with codefendant, (2) the clear instructions the prosecutor gave to the grand jury that the charges against defendant and the codefendant were to be considered separately, a charge the grand jurors presumably followed (*see People v Davis*, 58 NY2d 1102, 1104 [1983]), and (3) the codefendant's CPL 180.80 deadline, we find the People properly exercised their broad discretion to conduct grand jury proceedings in a manner they deem appropriate. Therefore, the People did not deprive defendant of a meaningful opportunity to testify before the grand jury (*see People v Johnson*, 168 Misc 2d at 801-802 [prosecutor's refusal to delay indefinitely a grand jury proceeding based on nebulous reasons offered by defendant in a capital case and where codefendant did not waive release on CPL 180.80 day is a proper exercise of prosecutorial discretion]).

## Huntley Hearing

### Scope of Cross-Examination

The arguments defendant advances relating to defense counsel's disclosures to the *Huntley* court, together with the court's misstatements at sentencing, that defendant perjured himself at said hearing, are themselves dispositive, entitling defendant to a new *Huntley* hearing (*see* discussion *infra*). We nevertheless address defendant's additional claim that the court improperly allowed the prosecutor to widen the scope of cross-examination during the hearing, as this issue may again arise at the new hearing.

Defendant made several statements to the police after his arrest, initially denying his guilt, but subsequently admitting he shot Pina in a murder for hire. Defendant argues that since the only relevant inquiry at the *Huntley* hearing was whether his statements were voluntary, the court erred in allowing the prosecutor to inquire about the truth of those statements.

Indeed, it is well settled that the truth of a confession is irrelevant at a *Huntley* hearing (*see People v Huntley*, 46 Misc

2d 209 [1965], *affd* 27 AD2d 904 [1967], *affd* 21 NY2d 659 [1967]). An exception arises when a defendant opens the door to such inquiry by affirmatively stating or even implying his innocence (*see People v Ray*, 192 AD2d 1010 [1993]; *Huntley*, 46 Misc 2d at 212; *People v Blackwell*, 128 Misc 2d 599, 602 [1985]; Brunetti, New York Confessions ch 9, at 349; Prince, Richardson on Evidence § 8-261 [Farrell 11th ed]).

Defendant cannot have it both ways. He cannot take the stand and deliberately parse his words, and, without being challenged, avoid saying whether his first exculpatory statement was true, but then claim that he was coerced into giving the purportedly false second and third inculpatory statements. The record supports the view that the clear inference defendant desired to create by his direct testimony—even though he, with the help of his attorney's carefully crafted questioning, avoided affirmatively and expressly asserting his innocence—was that his first statement was truthful but that he was forced to write and utter untruths in his second and third statements.

Moreover, defendant's constitutional privilege against self-incrimination was not violated in any way. The court advised that defendant's testimony at the *Huntley* hearing would not constitute a waiver of his self-incrimination privilege at any subsequent trial, but that if he took the stand at the subsequent trial, his sworn hearing testimony would be admissible for impeachment purposes only (*see Huntley*, 46 Misc 2d at 212-213). This ruling was proper, reasonable and fair.

*Counsel's Disclosures to the Court at the Huntley Hearing*

■ During ex parte and off-the-record conferences with the court, which occurred while the People's cross-examination of defendant was significantly underway, defense counsel expressed her concern that defendant might commit perjury. Defendant now argues that his attorney thus deprived him of his due process right to a fair hearing and to effective assistance of counsel.

It is beyond cavil that "[t]he right to effective counsel ensures not only meaningful representation but also the assistance of counsel that is 'conflict-free and singlemindedly devoted to the client's best interests' " (*People v Berroa*, 99 NY2d 134, 139 [2002] [citations omitted]). An attorney with a "perjurious client must contend with competing considerations—duties of zealous advocacy, confidentiality and loyalty to the client on the one hand, and a responsibility to the courts and our truth-seeking system of justice on the other" (*People v DePallo*, 96 NY2d 437, 440 [2001]). Indeed, a defense attorney's ethical duty

to advance the interest of his or her client is circumscribed by an " 'equally solemn duty' to 'prevent and disclose frauds upon the court' " (*People v Campos*, 249 AD2d 237, 238 [1998], *lv denied* 92 NY2d 923 [1998], quoting *Nix v Whiteside*, 475 US 157, 168-169 [1986]; *see also* Code of Professional Responsibility DR 7-102 [a] [4]; [b] [1] [22 NYCRR 1200.33 (a) (4); (b) (1)]).

Defense counsel advised the court she expected that defendant intended to claim either self-defense or an alibi, claims she believed untrue based on earlier conversations with defendant. To the extent defendant wanted counsel to present a false defense, she correctly believed she was duty-bound to refrain from doing so. Indeed, a defendant's right to testify does not include the right to commit perjury (*see Harris v New York*, 401 US 222, 225 [1971]). However, while the intent to commit a crime is not a protected confidence or secret (*see Nix v Whiteside*, 475 US at 174; *People v DePallo*, 96 NY2d at 442; *see also* Code of Professional Responsibility DR 4-101 [c] [3] [22 NYCRR 1200.19 (c) (3)]), here counsel stated that she did not believe defendant had perjured himself regarding his claim that he was coerced into giving the statements he made to the police, the sole issue at the *Huntley* hearing. Nor did counsel indicate that defendant had otherwise committed perjury at the hearing (*contrast People v DePallo*, 96 NY2d at 441 [defendant insisted on proceeding to give perjured testimony and thereafter counsel properly notified the court outside the presence of the jury. Further, the High Court specifically noted it was not addressing the appropriateness, or the due process implications of, these types of disclosures in a nonjury context (*id.* at 442 n 2)]). While counsel's concerns were legitimate, her ultimate disclosures to the court were unnecessary because, when she made them, defendant had just testified in a manner which, at that point, counsel had no reason to believe was perjurious.

Moreover, here counsel revealed to the court more than was necessary to convey her belief, ultimately unrealized, that her client intended perjury. Specifically, counsel, after defendant had already concluded his hearing testimony, spoke in detail about the substance of her presumably privileged conversations with defendant regarding their strategy, and even informed the court that she believed defendant had been at the scene and had shot the victim. This lapse in preserving client confidentiality, in light of what later occurred at defendant's sentencing proceeding (discussed *infra*), cannot be reconciled with notions of effective assistance of counsel and due process. This is espe-

cially so where, as in this portion of the case, the court is the finder of fact and the attorney made the disclosure before the justice had rendered a decision on the hearing. Finally, our concern is further underscored because at the time defense counsel decided first to reveal her concerns to the court, defendant had already testified on direct and had been extensively cross-examined. Counsel's second conversation with the court occurred after defendant's cross-examination had been concluded, and he had not at all perjured himself in the specified way counsel had feared. We therefore agree with defendant's contention that, on this record, these events, when they are viewed and considered together with the court's erroneous comments at sentencing, demonstrate that defendant's right to a fair *Huntley* hearing was compromised.

We continue our analysis of this issue, first, by recognizing the profound dilemma a defense lawyer faces when he or she must choose between making statements to a judge which might disclose confidences—or perceived confidences—on the one hand, and the lawyer's obligations as an officer of the court, on the other. This quandary has been the subject of much scholarly discussion because these predicaments are so difficult, the scenarios vary widely, and the remedies are often so debatable and unclear.[4] This problem inevitably becomes more acute in the "heat of battle" when courtroom decisions must be made—which may either jeopardize the client or breach one's duty to the court—without the luxury of reasoned reflection or collegial consultation. We are not insensitive to a lawyer's predicament, nor do we minimize it, especially in any circumstance where a client's actual or intended perjury confronts a trial lawyer who endeavors to be faithful to his or her oath to the law as well as to the client.

Indeed, we emphasize we have no reason to doubt that this defense attorney genuinely intended to follow the Code of

---

4. For example, see Wilkinson, *"That's A Damn Lie!": Ethical Obligations of Counsel When a Witness Offers False Testimony in a Criminal Trial,* 31 St. Mary's LJ 407 (2000); Collett, *Understanding Freedman's Ethics,* 33 Ariz L Rev 455 (1991); Thompson, Jr., *The Attorney's Ethical Obligations When Faced with Client Perjury,* 42 SC L Rev 973 (1991); Lefstein, *Client Perjury in Criminal Cases: Still in Search of an Answer,* 1 Geo J Legal Ethics 521 (1988); Skypeck, Note, *Professional Ethics of Criminal Defense Lawyers: Is There a Single Solution to the Issues Raised by a Perjuring Client?,* 16 Mem St U L Rev 531, 547-551 (1986); Wolfram, *Client Perjury,* 50 S Cal L Rev 809 (1977); Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions,* 64 Mich L Rev 1469 (1966).

Professional Responsibility. However, the timing of her revelations and their extensive detail require our comment, as she made her premature and unnecessarily detailed disclosures to the court when it was acting in a fact-finding capacity with ultimate responsibility for assessing credibility. Thus, the court was placed in the predicament of having virtually no choice but either to abort, delay and transfer the hearing to another justice, or to complete it and rely on its own expressed assurances of impartiality.

Furthermore, following the conclusion of its role as factfinder at the *Huntley* hearing and its repeated proclamations of impartiality, the court, seven months later, made comments at sentencing which have significantly heightened the level of our concern about defendant's contention on appeal. Indeed, the earlier judicial assertions of neutrality were undermined by the court's inappropriate and substantially inaccurate statements at sentencing. There, the court declared:

> "How do I know that [defendant committed perjury]? It's hardly presumptuous on my part when your own attorney had to come to me in camera and inform me that she didn't want to stay on your case anymore as a matter of ethics because you perjured yourself and she knew you were perjuring yourself."

Revelations to a *Huntley* court by a defense attorney of the type this attorney made here, standing alone, would generally not be deemed prejudicial to a client because a "judge is presumed to have disregarded inadmissible evidence" (*People v Whitehead*, 305 AD2d 286, 287 [2003], *lv denied* 100 NY2d 600 [2003]; *see also People v Moreno*, 70 NY2d 403, 406 [1987] [judge, by reasons of learning, experience and judicial discipline, uniquely capable of distinguishing issues and of making objective determinations based on appropriate legal criteria, despite awareness of facts which cannot be appropriately relied on]).

Here, however, we find it to be of critical significance that counsel's premature and unduly detailed revelations of her client's *intended* perjury—which he ultimately never uttered— followed by the court's assertions of impartiality, do not stand alone on this record. Rather, the court's above-quoted sentencing comments crucially distinguish this case from cases with otherwise similar facts. As a consequence, that distinction requires us to conclude that defendant must be accorded a new *Huntley* hearing.

We would add that, when confronted with this type of ethical dilemma, an attorney must first try to persuade the client to

testify truthfully. Failing that, and to the extent possible under our State's professional ethics guidelines, counsel should make every reasonable effort to limit the amount of information he or she conveys to a judge who is acting as a factfinder. Likewise, fact-finding judges should discourage attorneys from disclosing any more information relating to the specifics of lawyer-client conversations than is necessary to satisfy the court's obligation to encourage ethically responsible conduct by lawyers, hear admissible evidence, and render a fair decision.

Therefore, as an example, counsel would first alert the fact-finding court to the existence of a disagreement between lawyer and client about the client's imminent testimony, and then request the court's permission to allow the defendant-client to testify in narrative form. Thereafter, counsel would simply elicit testimony from the defendant in such form. Following that, counsel should avoid questioning the defendant about any such matters, as well as avoid all references in summation or otherwise to any portion of defendant's testimony which counsel believes to be false. By proceeding with an inquiry in that, or another equally thoughtful fashion, counsel minimizes the risk that a defendant's due process rights to a fair hearing before an impartial justice and his/her right to effective assistance of counsel will be imperiled (*see People v DePallo*, 96 NY2d at 439-440; *People v Salquerro*, 107 Misc 2d 155, 159 [1980], *affd* 92 AD2d 1091 [1983], *lv denied* 59 NY2d 977 [1983]).

Indeed, here, when counsel raised this issue, she was concerned about answers her client *might* give in response to questions which she could not be sure the prosecutor would ever even pose. At that juncture, counsel's professional obligation was primarily to avoid references to those answers in her own questions and in her closing remarks (*id.*). As it turned out, neither the questions counsel feared the assistant district attorney would ask, nor the answers she feared defendant would give, were ever asked or given.

A defense counsel's legitimate, further concern might also be to make a record, privately, summarizing the actions he or she has taken, or is about to take to resolve this ethical dilemma appropriately, and of the reasons he or she undertook them. The attorney may also wish to preserve the related advice he or she has given to the defendant.

Counsel should take these measures out of the justice's presence and in ways that would not place a fact-finding court in the difficult position of learning damaging factual matters that

might raise questions about its impartiality. For example, as the court suggested in *Lowery v Cardwell* (575 F2d 727, 731 n 5 [9th Cir 1978]), the attorney can create a file memorandum, subscribed by defendant, and/or witnessed by a colleague. In addition, we would offer that, as another alternative, the attorney may, in the defendant's presence and with the aid of the attorney's own stenographer, memorialize his or her legal advice to defendant together with an explanation of how the lawyer proposes to deal with the problem in an ethically appropriate way when defendant next appears before the judge. In addition to memorializing exactly what occurred and what was said between the lawyer and the client, these simple measures, in some circumstances at least, may cause a defendant to realize the implications of what is about to happen, and thus may dissuade defendant from committing any contemplated perjury.

Accordingly, the appeal from the judgment of the Supreme Court, New York County (Leslie Crocker Snyder, J.), rendered November 30, 1999, convicting defendant, after a jury trial, of murder in the first degree, and sentencing him to life without parole, should be held in abeyance, and the matter remanded for a new *Huntley* hearing before a different justice.[5]

BUCKLEY, P.J., ELLERIN, LERNER and FRIEDMAN, JJ., concur.

Appeal from judgment, Supreme Court, New York County, rendered November 30, 1999, held in abeyance, and the matter remanded for a new *Huntley* hearing, as indicated.

---

5. We are not unaware that the trial justice recently retired from office.