■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TAMARKQUA GARLAND, Appellant. [65 NYS3d 167]—

Judgment, Supreme Court, Bronx County (Peter J. Benitez, J.), rendered May 8, 2015, convicting defendant after a jury trial, of two counts of assault in the first degree and one count of criminal possession of a weapon in the second degree, and sentencing him, as a second violent felony offender, to an aggregate term of 14 years, affirmed. Judgment, same court (Peter J. Benitez, J. at suppression hearing; Lester Adler, J. at plea and sentencing), rendered March 2, 2016, convicting defendant upon his plea of guilty, of attempted criminal possession of a controlled substance in the fourth degree, and sentencing him to a concurrent term of 1½ years, unanimously affirmed.

With regard to the trial conviction, the court properly denied defendant's speedy trial motion. Defendant did not meet his

burden of demonstrating that the People's statement of readiness, which is "presumed truthful and accurate," was illusory (*People v Brown*, 28 NY3d 392, 405 [2016]). The record supports the reasonable inference that the prosecutor had reestablished contact with the complainant at the time that he filed the off-calendar statement of readiness.

The court properly denied defendant's suppression motion. As to the warrantless arrest of defendant, the People showed that the officers had obtained voluntary consent to enter the apartment from a person with the requisite authority (*see People v Cosme*, 48 NY2d 286, 290 [1979]). Neither the testimony of defendant nor the testimony of the detective gives rise to an inference that the person had submitted to coercion by the police (*see People v Gonzalez*, 39 NY2d 122, 128 [1976]).

Accepting the hearing court's credibility determinations (*see People v Prochilo*, 41 NY2d 759 [1977]), the People also met their burden of demonstrating that defendant waived his *Miranda* rights and made the written statement voluntarily. The court properly permitted the People to cross-examine defendant on the substance of the written statement, as defendant opened the door to the inquiry by testifying on direct examination that the detective interrogating him had rejected his initial statement and coerced him into writing the subsequent inculpatory statement (*see People v Darrett*, 2 AD3d 16, 20-21 [1st Dept 2003]; *People v Huntley*, 46 Misc 2d 209, 211-212 [Sup Ct, NY County 1965], *affd* 27 AD2d 904 [1st Dept 1967], *affd* 21 NY2d 659 [1967]).

The verdict was supported by legally sufficient evidence and was not against the weight of the evidence (*see People v Danielson*, 9 NY3d 342, 348 [2007]). The element of serious physical injury (Penal Law § 10.00 [10]) required for the assault convictions (Penal Law § 120.10 [1], [3]) was established by evidence showing that four years after the complainant was struck by a bullet, he still felt pain and the bullet fragments in his leg and could not engage in sports at the same level as before the incident. This proof sufficiently shows a protracted impairment of health or protracted impairment of the function of a bodily organ to support a finding of serious physical injury (*see* Penal Law § 10.00 [10]; *People v Rosa*, 112 AD3d 551 [1st Dept 2013], *lv denied* 22 NY3d 1202 [2014]; *People v Messam*, 101 AD3d 407 [1st Dept 2012], *lv denied* 20 NY3d 1102 [2013]; *People v Corbin*, 90 AD3d 478, 479 [1st Dept 2011], *lv denied* 19 NY3d 972 [2012]). Defendant's intent to cause such injury (Penal Law § 120.10 [1]) is established by his written statement admitting that he fired the gun five times into a crowd of

people (see People v Hernandez, 233 AD2d 273 [1st Dept 1996], lv denied 89 NY2d 986 [1997]). His written confession also establishes the element of possession of a loaded firearm required for the weapon possession conviction (see Penal Law § 265.03 [3]).

By failing to object to any of the alleged prejudicial comments by the prosecutor, defendant failed to preserve his challenges to the People's summation (see People v Flagg, 149 AD3d 513, 514-515 [1st Dept 2017], lv denied 29 NY3d 1079 [2017]), and we decline to review them in the interest of justice. As an alternative holding, we find no basis for reversal. The bulk of the challenged remarks were either fair response to defense counsel's arguments on summation or fair comment on the evidence, and any improprieties were not so egregious as to deprive defendant of a fair trial (see People v D'Alessandro, 184 AD2d 114 [1st Dept 1992], lv denied 81 NY2d 884 [1993]).

Regarding defendant's plea conviction, the record shows that defendant's waiver of his right to appeal was not knowing, intelligent and voluntary. Moreover, the waiver contains language that has been found by this Court to render a waiver unenforceable (see People v Powell, 140 AD3d 401 [1st Dept 2016], lv denied 28 NY3d 1074 [2016]). Nevertheless, defendant's challenge to the suppression ruling is unpreserved, and we decline to review it in the interest of justice. As an alternative holding, we reject it on the merits. Since we do not find the officer's testimony to be manifestly untrue, contrary to common experience, self-contradictory, or tailored, we decline to disturb the court's conclusion that the testimony was credible (see People v Sanchez, 248 AD2d 306 [1st Dept 1998], lv denied 92 NY2d 930 [1998]; People v Jordan, 242 AD2d 254, 255 [1st Dept 1997], lv denied 91 NY2d 875 [1997]). The officer's testimony that, while apprehending another individual, he saw defendant sitting on the stairs with a scale and drugs supports the court's finding of probable cause to arrest defendant and seize the drugs. Concur—Mazzarelli, Moskowitz, Kahn and Kern, JJ.

Manzanet-Daniels, J.P., dissents in part in a memorandum as follows: In my view, the evidence at trial was legally insufficient to establish the element of "serious physical injury," defined as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]), and the convictions for assault in the first degree under Penal Law §§ 120.10 (1) and (3) should be reversed.

The charges stem from an incident on the evening of October 9, 2010, when, during a street brawl, defendant shot a gun multiple times toward a group of people, and struck 15-year-old bystander Lloyd B. in the leg.

Lloyd testified that after being shot, he returned to his apartment building. He initially thought he had been struck with a BB gun because "the bullet hole was so little." Later on that day, he went to the hospital, where police officers informed him that he had been shot with a gun. He reiterated that he hadn't realized, since the "[bullet] hole [wa]s so little," explaining that it "didn't even look like a bullet hole. I didn't know what it was." Lloyd received a tetanus shot and antibiotics at the hospital, but no pain medication. He initially rated his pain a 7 out of 10; two hours later, he rated his pain 0 out of 10. He did not undergo surgery. X rays showed no fractures or neurovascular damage. He denied any numbness, tingling or motor deficit, indicators that he had not suffered any acute damage.

Lloyd has retained bullet fragments within the left thigh; there was no evidence that the fragments caused any damage or endangered his life in any way. The People's expert testified that the fragments were "maybe" in the vicinity of the femoral artery. She explained that in trauma situations it was protocol to leave such fragments in an extremity so as not to cause possible further damage.

The People's expert was provided with no records beyond 2010, and thus was unable to opine as to whether Lloyd had a permanent disability.

Lloyd used crutches intermittently for a period of two months following the shooting. He has since resumed an active lifestyle. Although he once played on the football team, he now plays on a recreational basis. He testified that four years after the incident, he still had what he characterized as "little problems," such as soreness at night and "[w]hen it rains." He maintained at trial that he could feel the bullet fragments in his leg.

Lloyd was never in serious apprehension of death within the meaning of the statute, nor does the prosecution contend as much. Rather, the prosecution maintains that he suffered "serious and . . . protracted impairment of health" because he used crutches for two months, has intermittent pain, and has bullet fragments lodged near his femoral artery.

These are not bases for finding that Lloyd suffered "serious physical injury" as contemplated in the statute. The temporary use of crutches does not indicate "serious physical injury" (*see People v Ham*, 67 AD3d 1038, 1040 [3d Dept 2009] [conclusory

assertion of use of crutches, pain medication, and physical therapy by gunshot victim did not support finding of "serious physical injury"]). Slight pain upon exertion or while running does not constitute "serious physical injury" (*see People v Daniels*, 97 AD3d 845, 847 [3d Dept 2012] [sore knee once in a while insufficient, where victim was able to resume playing soccer], *lv denied* 20 NY3d 931 [2012]), nor do complaints of intermittent pain associated with the weather (*see People v Castillo*, 199 AD2d 276 [2d Dept 1993]). Lloyd does not experience "persistent pain so severe as to cause protracted impairment of health" (*People v Romero*, 147 AD3d 1490, 1491-1492 [4th Dept 2017], *lv denied* 29 NY3d 1036 [2017]).

There is no proof of injury connected to the bullet fragments, nor is there proof that Lloyd's life was endangered by the presence of the fragments (*compare People v Horton*, 9 AD3d 503, 505 [3d Dept 2004], *lv denied* 3 NY3d 707 [2004] [no "serious physical injury" where surgeon declined to remove bullet fragments lodged near the spinal cord], *with People v Walker*, 279 AD2d 696, 697-698 [3d Dept 2001], *lv denied* 96 NY2d 869 [2001] [finding "serious physical injury" where a bullet fragment near the victim's spine had in fact caused paralysis and life-threatening injury and necessitated long-term rehabilitation]). Notably, the People's expert was unable to opine as to whether Lloyd had suffered permanent deficits associated with the injury.

The fact that Lloyd suffered a gunshot wound does not ipso facto establish that he suffered a "serious physical injury" (*see e.g. People v Ekwegbalu*, 131 AD3d 982, 984 [2d Dept 2015], *lv denied* 26 NY3d 1108 [2016]).

Because I dissent on the above basis, I express no opinion concerning the proper remedy for the People's failure to establish the "serious physical injury" element of assault,* or any of the other arguments advanced by defendant on appeal.

---

* Proper remedies might include reducing the conviction to a lesser included offense (*see Romero*, 147 AD3d at 1491; *People v Snipes*, 112 AD2d 810 [1st Dept 1985]).