409 F.3d 523
 Nelson BROWN, Petitioner-Appellee-Cross-Appellant,
v.
Charles GREINER, Superintendent, Green Haven Correctional Facility, Respondent-Appellant-Cross-Appellee.
Harry Rosen, Petitioner-Appellee,
v.
James Walsh, Superintendent, Sullivan Correctional Facility; Eliot L. Spitzer, Attorney General of the State of New York, Respondent-Appellants.
Betsy Ramos, Petitioner-Appellant,
v.
Elaine Lord, Superintendent; Bedford Hills Correctional Facility; Eliot Spitzer, New York State Attorney General, Respondent-Appellees.
 No. 03-2242(L).
 No. 03-2269(XAP).
 No. 03-2480.
 No. 03-2833.
 United States Court of Appeals, Second Circuit.
 Argued: September 27, 2004.
 Decided: June 3, 2005.
 
 COPYRIGHT MATERIAL OMITTED Erica Horwitz, Appellate Advocates (Lynn W.L. Fahey, on the brief), New York, NY, for Petitioner-Appellee-Cross-Appellant Nelson Brown.
 Leonard Joblove, Assistant District Attorney, Kings County (Charles J. Hynes, District Attorney; Jane S. Myers, Assistant District Attorney, on the brief), Brooklyn, NY, for Respondent-Appellant-Cross-Appellee Charles Greiner.
 Andrew C. Fine, The Legal Aid Society, Criminal Appeals Bureau, Brooklyn, NY, for Petitioner-Appellee Harry Rosen.
 Morrie I. Kleinbart, Assistant District Attorney, New York County (Robert M. Morgenthau, District Attorney; Nicole Beder, Assistant District Attorney, on the brief), New York, NY, for Respondent-Appellants James Walsh and Eliot L. Spitzer.
 John Schoeffel, The Legal Aid Society, Criminal Appeals Bureau, New York, NY, for Petitioner-Appellant Betsy Ramos.
 Jane S. Myers, Assistant District Attorney, Kings County, (Charles J. Hynes, District Attorney; Leonard Joblove, Scott J. Splittgerber, Assistant District Attorneys, on the brief), Brooklyn, NY, for Respondent-Appellees Elaine Lord and Eliot Spitzer.
 Theodore S. Green and Richard D. Willstatter, Green & Willstatter, White Plains, NY, for Amici Curiae National Association of Criminal Defense Lawyers and New York State Association of Criminal Defense Lawyers.
 Before: WALKER, Chief Judge, LEVAL, KATZMANN, Circuit Judges.
 LEVAL, Circuit Judge.
 
 
 1
 These three appeals, which we have consolidated, present the same question: Were the state court decisions affirming Petitioners' extended sentences under New York's persistent felony offender statute, N.Y. Penal Law § 70.10, "contrary to, or ... an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"? 28 U.S.C. § 2254(d). The relevant Supreme Court ruling to which the petitions refer is Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which ruled that in order for a sentence to comply with the dictates of the Sixth Amendment, a factual finding that drives a sentence above the otherwise applicable statutory maximum penalty (other than the fact of a prior conviction) must be found by the jury beyond a reasonable doubt, or be admitted by the defendant. We hold it was not unreasonable, in light of then-existing Supreme Court precedent, for the state courts to conclude that a sentencing judge's "opinion" as to what type of sentence would "best serve the public interest" is not a factual finding within the meaning of Apprendi. We accordingly reverse the judgments granting writs of habeas corpus in Brown and Rosen, and affirm the judgment denying the writ in Ramos.
 
 BACKGROUND
 
 2
 I. The New York Persistent Felony Offender Statute
 
 
 3
 Petitioners Nelson Brown, Harry Rosen, and Betsy Ramos, in their separate prosecutions, were each sentenced to extended sentences under New York's persistent felony offender statute, N.Y. Penal Law § 70.10. Under that statute, each received a longer sentence than New York law would otherwise have permitted. New York law designates two classes of persistent felony offenders: (1) persistent violent felony offenders, and (2) persistent felony offenders. A person convicted of a violent felony, after two prior convictions for violent felonies, is deemed (with certain exceptions) a "persistent violent felony offender" and is subject under N.Y. Penal Law § 70.08 to a mandatory extended sentence. Section 70.10, which applies to the defendants in this case, provides that "a person, other than a persistent violent felony offender . . ., who stands convicted of a felony after having previously been convicted of two or more felonies" is a "persistent felony offender" (subject to certain qualifications relating primarily to the nature of the prior offenses, the sentences the defendant received for them, and whether imprisonment for the prior offenses began prior to the commission of the present offense). If the sentencing court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest," id. § 70.10(2), such an offender may be sentenced for the new felony offense as if it were a Class A-I felony, notwithstanding the statutory penalty ordinarily provided for the crime committed.[1] Determinations under this section are made after a hearing conducted under N.Y. Criminal Procedure Law § 400.20. For Class A-I felonies, New York law imposes an indeterminate sentence with a mandatory minimum of fifteen or twenty-five years, and a maximum of life imprisonment. See N.Y. Penal Law § 70.00(2)(a), (3)(a)(i).
 
 II. The Facts of the Cases
 A. Nelson Brown
 
 4
 Petitioner Nelson Brown was convicted, following a jury trial, of criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02(4). The prosecution stemmed from a gun fight that resulted in the accidental shooting of a fourteen-year-old. The jury acquitted Brown of all other charges.
 
 
 5
 Third-degree criminal possession of a weapon ordinarily carries a maximum sentence of seven years. See N.Y. Penal Law §§ 70.00(2)(d), 265.02. Brown, however, was charged under § 70.10 as a persistent felony offender. At his persistent felony offender hearing, Brown conceded that he had two predicate felony convictions. After receiving evidence, the court sentenced Brown under § 70.10, as if he had been convicted of a Class A-I felony, to an indeterminate term of fifteen years to life imprisonment. In imposing the sentence, the judge expressed reluctance and some regret that "no middle ground" existed between the seven-year maximum sentence that would otherwise apply and sentencing Brown to fifteen years to life as if he committed an A-I felony.
 
 
 6
 Brown appealed, challenging the sufficiency of the evidence supporting his conviction and the sentencing court's failure to state on the record with sufficient specificity the reasons why it imposed a persistent felony offender sentence. On January 31, 2000, the New York Supreme Court, Appellate Division, held that Brown had failed to preserve his sufficiency-of-the-evidence claim for appellate review and, in the alternative, that the evidence was legally sufficient to establish Brown's guilt beyond a reasonable doubt. The Appellate Division, however, vacated and remanded for resentencing because the sentencing judge had failed to record the reasons for sentencing Brown as a persistent felony offender. People v. Brown, 268 A.D.2d 593, 704 N.Y.S.2d 83 (2nd Dept.2000), leave to appeal denied, 94 N.Y.2d 945, 731 N.E.2d 619, 710 N.Y.S.2d 2 (2000) (table). At resentencing, the trial court elaborated on its reasons and again sentenced Brown, as if an A-I felony offender, to fifteen years to life imprisonment.
 
 
 7
 Brown appealed from the reimposed sentence. In the meantime, the United States Supreme Court decided Apprendi. Brown argued that his sentence violated Apprendi, but the Appellate Division dismissed this argument as "without merit." People v. Brown, 284 A.D.2d 406, 726 N.Y.S.2d 280 (2nd Dept.2001). Brown was denied leave to appeal to the New York Court of Appeals on August 2, 2001. People v. Brown, 96 N.Y.2d 916, 758 N.E.2d 659, 732 N.Y.S.2d 633 (2001) (table).
 
 
 8
 Brown then petitioned in the United States District Court for the Eastern District of New York for a writ of habeas corpus under 28 U.S.C. § 2254. The district court (John Gleeson, J.) denied several of his claims, but granted the writ of habeas corpus, concluding that Brown's persistent felony offender sentence violated Apprendi. Brown v. Greiner, 258 F.Supp.2d 68, 80-82 (E.D.N.Y.2003). The State then brought this appeal.[2]
 
 B. Harry Rosen
 
 9
 Petitioner Harry Rosen was convicted, following a jury trial, of sexual abuse in the first degree, in violation of N.Y. Penal Law § 130.65(3), and endangering the welfare of a child, in violation of N.Y. Penal Law § 260.10(1). The convictions resulted from his sexual abuse of a four-year-old while riding next to her on a subway car.
 
 
 10
 First-degree sexual abuse ordinarily carries a maximum sentence of seven years See N.Y. Penal Law §§ 70.00(2)(d), 130.65. Rosen was charged as a persistent felony offender under § 70.10. At his persistent felony offender hearing, Rosen conceded that he had been previously convicted of two predicate felonies. The court received evidence concerning Rosen's psychiatric condition, his extensive history of abusing children, his own history of being abused as a child, and the impact of the crime on the victim's family. The court sentenced Rosen under the persistent offender statute, as if convicted of a Class A-I felony, to an indeterminate term of twenty-five years to life in prison on the first-degree sexual abuse count, with a concurrent sentence of one year on the child endangerment count.
 
 
 11
 The Appellate Division affirmed Rosen's conviction on December 7, 1999. People v. Rosen, 267 A.D.2d 28, 700 N.Y.S.2d 116 (1st Dept.1999). Rosen was granted leave to appeal to the New York Court of Appeals, and while his appeal was pending, the Supreme Court decided Apprendi. Rosen then argued for the first time before the New York Court of Appeals that the increase in his sentence beyond the otherwise applicable maximum, based on the sentencing judge's findings under the persistent felony offender statute, violated his Sixth Amendment right to a jury trial.
 
 
 12
 The Court of Appeals rejected Rosen's argument. People v. Rosen, 96 N.Y.2d 329, 752 N.E.2d 844, 728 N.Y.S.2d 407, cert. denied, 534 U.S. 899, 122 S.Ct. 224, 151 L.Ed.2d 160 (2001). The court examined the statutory provision which allows a court to sentence a defendant as if for a Class A-I felony if it "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." N.Y. Penal Law § 70.10(2). The court concluded:
 
 
 13
 It is clear from the foregoing statutory framework that the prior felony convictions are the sole determina[nt] of whether a defendant is subject to enhanced sentencing as a persistent felony offender. Then, the court must consider other enumerated factors to determine whether it "is of the opinion that a persistent felony offender sentence is warranted." As to the latter, the sentencing court is thus only fulfilling its traditional role — giving due consideration to agreed-upon factors — in determining an appropriate sentence within the permissible statutory range.
 
 
 14
 Rosen, 96 N.Y.2d at 335, 752 N.E.2d at 847, 728 N.Y.S.2d at 410 (internal citations omitted). The court thus concluded that the only fact-finding necessary to the imposition of an enhanced persistent felony offender sentence is of prior convictions and is excluded from the Apprendi rule. As for the sentencing court's opinion that "extended incarceration ... will best serve the public interest," the Court of Appeals deemed this conclusion to be not the kind of fact-finding covered by the Apprendi rule, but rather a sentencing assessment of the sort traditionally reserved to the sentencing judge.
 
 
 15
 After discussing the Apprendi issue, the court considered the "mode of proceedings" exception to the rule against considering unpreserved issues on appeal. The exception allows appellate consideration of certain fundamental errors despite the absence of a timely objection, but is limited to those errors "going to the very organization of the court or at such basic variance with the mode of procedure mandated by law that they impair the essential validity of the criminal proceedings." People v. Voliton, 83 N.Y.2d 192, 195, 630 N.E.2d 641, 643, 608 N.Y.S.2d 945, 947 (1994); see also People v. Ahmed, 66 N.Y.2d 307, 487 N.E.2d 894, 496 N.Y.S.2d 984 (1985); People v. Kinchen, 60 N.Y.2d 772, 457 N.E.2d 786, 469 N.Y.S.2d 680 (1983); People v. Patterson, 39 N.Y.2d 288, 347 N.E.2d 898, 383 N.Y.S.2d 573 (1976); People v. McLucas, 15 N.Y.2d 167, 204 N.E.2d 846, 256 N.Y.S.2d 799 (1965).
 
 
 16
 The Court of Appeals found that the exception did not apply because Rosen had not demonstrated entitlement to a jury trial to establish the only facts necessary to the imposition of his persistent felony offender sentence — i.e., the existence of his prior convictions. The court therefore found no fundamental defect in the proceedings and concluded that Rosen's failure to object before the sentencing court barred him from raising his Apprendi claim for the first time on appeal. Rosen, 96 N.Y.2d at 335, 752 N.E.2d at 847, 728 N.Y.S.2d at 410.
 
 
 17
 The United States Supreme Court denied Rosen's petition for a writ of certiorari on October 1, 2001. Rosen v. New York, 534 U.S. 899, 122 S.Ct. 224, 151 L.Ed.2d 160 (2001). Rosen then filed a petition for habeas corpus relief in the United States District Court for the Southern District of New York. The district court (Alvin K. Hellerstein, J.) granted the writ of habeas corpus for substantially the reasons given by Judge Gleeson in Brown. See Rosen v. Walsh, No. 02 Civ. 7782 (S.D.N.Y. July 18, 2003). The State then brought this appeal.
 
 C. Betsy Ramos
 
 18
 Petitioner Betsy Ramos was convicted, following a jury trial, of manslaughter in the second degree, in violation of N.Y. Penal Law § 125.15(1); assault in the second degree, in violation of N.Y. Penal Law § 120.05(3); and obstructing governmental administration in the second degree, in violation of N.Y. Penal Law § 195.05. The jury acquitted Ramos on related charges of murder in the second degree. The charges stemmed from a struggle in which Ramos's boyfriend shot and killed a police officer executing a bench warrant for his arrest.
 
 
 19
 Second-degree manslaughter ordinarily carries a maximum sentence of fifteen years. See N.Y. Penal Law §§ 70.00(2)(c), 125.15. Ramos, however, was charged as a persistent felony offender. At her persistent felony offender hearing, Ramos conceded that she had been previously convicted of four predicate felonies. The court received evidence of Ramos's history of drug addiction and of the impact of the officer's death on his family. The court sentenced Ramos as a Class A-I felony offender to an indeterminate term of fifteen years to life on the second-degree manslaughter count, with concurrent terms of seven years on the second-degree assault count and one year on the obstruction of governmental administration count.
 
 
 20
 After her sentence, the Supreme Court decided Apprendi. On Ramos's appeal to the Appellate Division, she raised an Apprendi claim for the first time. The Appellate Division affirmed. Citing the disposition of the Court of Appeals in Rosen, the Appellate Division held that Ramos had failed to preserve her Apprendi claim for appellate review. People v. Ramos, 287 A.D.2d 471, 731 N.Y.S.2d 50 (2nd Dept.2001). Ramos was denied leave to appeal to the New York Court of Appeals on November 27, 2001. People v. Ramos, 97 N.Y.2d 657, 762 N.E.2d 937, 737 N.Y.S.2d 59 (2001) (table).
 
 
 21
 Ramos filed a petition for habeas corpus in the United States District Court for the Eastern District of New York. The district court (Nicholas G. Garaufis, J.) denied Ramos's petition as procedurally barred by reason of Ramos's failure to preserve her objection in the New York courts. Ramos v. Lord, No. 03-CIV-0472 (E.D.N.Y. October 28, 2003). Ramos then brought this appeal.
 
 III. The Rule of Apprendi
 
 22
 Apprendi involved an enhanced sentence under New Jersey's hate-crime law, which authorized imposition of an extended sentence of ten to twenty years for second-degree offenses if the sentencing judge determined that "[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity." 530 U.S. at 468-69, 120 S.Ct. 2348 (quoting N.J. STAT. ANN. § 2C:44-3(e) (West Supp.1999-2000), repealed by 2001 N.J. Sess. Law Serv. 443 (West), reenacted as amended, N.J. STAT. ANN. § 2C:16-1). The defendant in Apprendi had fired several shots into the home of an African-American family, which had moved into an all-white neighborhood. Id. at 469, 120 S.Ct. 2348. The sentencing judge found that the defendant had committed the crimes with a biased purpose and accordingly sentenced him to twelve years for a firearm offense normally carrying a five — to ten-year term. Id. at 470-71, 120 S.Ct. 2348. The Supreme Court held that it was unconstitutional for the sentencing judge to sentence above the otherwise applicable statutory maximum based on the judge's factual finding as to the defendant's intent at the time he committed the crime. The rule formulated by the Court was that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490.
 
 
 23
 The "fact of a prior conviction" exception avoided a conflict between Apprendi and Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Almendarez-Torres pleaded guilty to reentering the United States without permission following his deportation, in violation of 8 U.S.C. § 1326. Id. at 227, 118 S.Ct. 1219. Section 1326(a) provides for a maximum sentence of two years, but § 1326(b) authorizes a maximum sentence of twenty years if the prior deportation "was subsequent to a conviction for commission of an aggravated felony." Almendarez-Torres admitted that his three aggravated felony convictions preceded his deportation, but argued that his eighty-five-month sentence was unconstitutional because the indictment had failed to allege the existence of those convictions. Almendarez-Torres, 523 U.S. at 227, 118 S.Ct. 1219. The Supreme Court rejected this argument on the ground that prior convictions function as a sentencing factor, rather than a statutory element, and therefore do not need to be alleged in the indictment.
 
 DISCUSSION
 
 24
 Petitioners contend New York's persistent offender statute violates the requirements of Apprendi because it authorizes the sentencing judge (rather than the jury) to find facts that increase the sentence beyond the maximum otherwise provided by law for the particular offense and does not require a finding beyond a reasonable doubt. See Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. They focus on the sentencing judge's determinations concerning the "history and character" of the defendant and the "nature and circumstances" of the offense, as well as on the conclusion that an extended sentence "will best serve the public interest." Petitioners contend that these determinations are factual findings, which "increase the penalty for a crime beyond the prescribed statutory maximum," and under Apprendi, therefore, "must be submitted to the jury" and proved beyond a reasonable doubt. See Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.
 
 
 25
 The State submits three arguments in opposition. First, the State contends that habeas review is precluded, at least in the cases of Rosen and Ramos, because the state court decisions rejecting their claims rested on an independent and adequate state procedural ground. See Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Second, it argues that under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, § 104, 110 Stat. 1214, 1219, the governing standard in this case is not whether the state courts correctly interpreted Apprendi, but whether their interpretation was reasonable at the time. See 28 U.S.C. § 2254(d). The State argues that the New York courts did not apply Apprendi unreasonably in concluding that the sentencing judge may make the determinations upon which persistent felony offender sentencing turns. This is because prior felony offenses are expressly excluded from the Apprendi rule, and the sentencing court's further determination that extensive imprisonment would best serve the public interest is not a factual finding in the sense intended by Apprendi, but rather an appraisal of the defendant and the defendant's crime in relation to the objectives of sentencing — an evaluation characteristically made by the sentencing judge. Finally, the State contends that the New York courts did not apply Apprendi unreasonably in light of the Supreme Court's express refusal to overturn Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), until its subsequent decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We reject the first argument, agree with the second, and therefore have no need to evaluate the third.
 
 I. Procedural Forfeiture
 
 26
 On habeas corpus, federal courts do not review arguments procedurally defaulted in state court if the finding of default constitutes an "independent and adequate state ground" for the state court's decision "unless the prisoner can demonstrate cause for the default and actual prejudice . . ., or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 729-32, 750, 111 S.Ct. 2546.
 
 
 27
 We "presume that there is no independent and adequate state ground for a state court decision when the decision `fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" Id. at 735, 111 S.Ct. 2546 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)).
 
 
 28
 The Court of Appeals' finding of procedural default in Rosen did not rest on an adequate and independent state ground. Rather, it was dependent on the court's finding that the Apprendi claim was without merit. Had the court found the claim meritorious, it would have needed to decide whether it came within the "mode of proceedings" exception to the rule barring consideration of unpreserved objections, which applies in the case of fundamental errors that impair the validity of the proceeding. The determination that the claim lacked merit established that it was not a "mode of proceedings" error, thus permitting the court to invoke the procedural ground for rejection. Referring to its rejection of the merits of the Apprendi claim, the court wrote: "Based on the foregoing, it is clear that there was no mode of proceedings error in this matter and, thus, any alleged error required preservation." Rosen, 96 N.Y.2d at 335, 752 N.E.2d at 847, 728 N.Y.S.2d at 410. The procedural ruling based on state law was therefore "interwoven" with the court's rejection of the federal law claim on the merits; it does not bar federal habeas review.
 
 
 29
 We reach the same conclusion with respect to the Appellate Division's decision in Ramos, which relied on Rosen to support its conclusion that Ramos had failed to preserve her Apprendi claim for appellate review. Ramos, 287 A.D.2d at 472, 731 N.Y.S.2d at 50. We therefore disagree with the district court's determination that Ramos's claim is procedurally barred.
 
 
 30
 II. Application of "clearly established Federal law, as determined by the Supreme Court"
 
 
 31
 Under 28 U.S.C. § 2254(d), enacted as part of AEDPA, a federal court must give deference to the state court's interpretation of federal law where the state court has adjudicated the petitioner's claim "on the merits." The first question we must answer, therefore, is whether the state court decisions rejecting the petitioners' claims were "on the merits." In Brown's case, the Appellate Division ruled that his Apprendi claim was "without merit," which was clearly a decision on the merits. In Rosen's case, the Court of Appeals' rejection of the Apprendi claim on the merits was the basis of its conclusion that the "mode of proceedings" exception was not applicable, and that the claim was thus procedurally barred. Under the circumstances, we conclude that the Court of Appeals' rejection of Rosen's Apprendi claim was also an adjudication "on the merits" under § 2254(d). In Ramos's case, the succinct ruling of the Appellate Division that Ramos's claim was barred was supported only by a citation to the Court of Appeals' decision in Rosen. We therefore deem it to have been an adjudication on the merits, just like the Rosen ruling.
 
 
 32
 Accordingly, our review of all three rulings falls under the deferential standard of § 2254(d). Under that standard, a federal court is prohibited from granting the petition unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d). Under this standard, we decide not whether the state court correctly interpreted the doctrine of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at the time.
 
 
 33
 Later Supreme Court decisions play no role in assessing the reasonableness of the state court decisions.[3] Accordingly, our appraisal of the reasonableness of the state court interpretations of Apprendi may not be influenced by the Supreme Court's subsequent elucidation in such cases as Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). We conclude that the state courts did not unreasonably apply Apprendi and the cases that preceded it, as understood at the time, and therefore that Petitioners are not entitled to habeas relief.
 
 
 34
 New York's persistent felony offender statute authorizes an enhanced sentence if: (1) a felony offender has two predicate felony convictions; and (2) the court "is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." N.Y. Penal Law § 70.10. The first determination clearly falls within Apprendi's "fact of a prior conviction" exception. See Apprendi, 530 U.S. at 488-90, 120 S.Ct. 2348. Moreover, all three Petitioners conceded the existence of the predicate felony convictions. It was therefore not unreasonable for the state courts to conclude that the judicial finding of at least two predicate felony convictions comported with the dictates of Apprendi.
 
 
 35
 As for the second determination, we do not believe the Court of Appeals applied Apprendi unreasonably in distinguishing this judicial finding from the type of fact-finding at issue in Apprendi. The fact at issue in Apprendi was whether the defendant's crime was committed "with a purpose to intimidate . . . because of race, color, gender, handicap, religion, sexual orientation or ethnicity." Id. at 468-69, 120 S.Ct. 2348 (internal quotation marks omitted). This fact was specifically enumerated in the statute as an essential element, or functional equivalent, that was necessary to sentence a defendant at the increased level. The Supreme Court decisions preceding Apprendi similarly involved findings of specifically enumerated facts that were necessary to increase sentencing ranges. For example, in Castillo v. United States, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000), the defendant's exposure to a higher sentence depended on the type of firearm used or carried during his commission of a crime of violence. In Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the statute called for a higher sentence if the crime resulted in "serious bodily injury."
 
 
 36
 The second determination to be made under New York's persistent felony offender statute is of a very different sort. It is a vague, amorphous assessment of whether, in the court's "opinion," "extended incarceration and life-time supervision" of the defendant "will best serve the public interest." See N.Y. Penal Law § 70.10(2). The New York Court of Appeals considered this exercise to be something quite different from the precise finding of a specific fact, as in the cases culminating in Apprendi. The court stressed that unlike the specific factual finding of predicate felonies, which the court labeled "the sole determina[nt]" of exposure to the enhanced sentence (and which is expressly excluded by the Supreme Court from the Apprendi rule), the other factor that determines whether the defendant will receive an enhanced sentence involves the sentencing court's fulfillment of "its traditional role — giving due consideration to agreed-upon factors — in determining an appropriate sentence within the permissible statutory range." Rosen, 96 N.Y.2d at 335, 752 N.E.2d at 847, 728 N.Y.S.2d at 410. We cannot say the New York Court of Appeals unreasonably applied Apprendi when it concluded that this second determination is something quite different from the fact-finding addressed in Apprendi and its predecessors.
 
 
 37
 We recognize that determining what sentence "best serve[s] the public interest" under the statute turns on findings relating to the "history and character of the defendant and the nature and circumstances of his criminal conduct." N.Y. Penal Law § 70.10(2). The statute, however, does not enumerate any specific facts that must be found by the sentencing court before it can conclude that the extended sentence is in the public's "best ... interest." It was not unreasonable for the Court of Appeals to conclude that such determinations regarding the defendant's history, character, and offense fall into a different category from the essential statutory elements of heightened sentencing, or functional equivalents thereof, that were addressed by the Supreme Court's Apprendi ruling. We therefore conclude that the state court decisions affirming Petitioners' sentences were not "contrary to, or ... an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
 
 CONCLUSION
 
 38
 We have considered Petitioners' remaining claims and find them to be without merit. For the foregoing reasons, we AFFIRM the district court's judgment in Ramos, while in Brown and Rosen we REVERSE the judgments and direct the dismissal of the petitions.
 
 
 
 Notes:
 
 
 [1]
 N.Y. Penal Law § 70.10 states in full:
 
 
 [1]
 Definition of persistent felony offender
 (a) A persistent felony offender is a person, other than a persistent violent felony offender as defined in section 70.08, who stands convicted of a felony after having previously been convicted of two or more felonies, as provided in paragraphs (b) and
 (c) of this subdivision.
 (b) A previous felony conviction within the meaning of paragraph (a) of this subdivision is a conviction of a felony in this state, or of a crime in any other jurisdiction, provided:
 (i) that a sentence to a term of imprisonment in excess of one year, or a sentence to death, was imposed therefor; and
 (ii) that the defendant was imprisoned under sentence for such conviction prior to the commission of the present felony; and
 (iii) that the defendant was not pardoned on the ground of innocence; and
 (iv) that such conviction was for a felony offense other than persistent sexual abuse, as defined in section 130.53 of this chapter.
 (c) For the purpose of determining whether a person has two or more previous felony convictions, two or more convictions of crimes that were committed prior to the time the defendant was imprisoned under sentence for any of such convictions shall be deemed to be only one conviction.
 
 
 [2]
 Authorized sentence. When the court has found, pursuant to the provisions of the criminal procedure law, that a person is a persistent felony offender, and when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 70.00, 70.02, 70.04 or 70.06 for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by that section for a class A-I felony. In such event the reasons for the court's opinion shall be set forth in the record
 
 
 [2]
 Brown cross-appealed, contending he was sentenced on the basis of materially false information in violation of his right to due processSee Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). He asserts the State never presented any proof that he constructively possessed the guns, drugs, and bulletproof vest found in his apartment. We find no merit in this contention. The videotaped statements of Brown's co-defendants introduced at the suppression hearing, Brown's admission to disposing of all the guns used in the firefight, and his statements prior to the start of the search, all support the sentencing court's factual findings. See United States v. Pugliese, 805 F.2d 1117, 1122-23 (2d Cir.1986) (sentencing judge entitled to consider information in transcripts of Fatico hearing before a different judge).
 
 
 [3]
 The Supreme Court has provided inconsistent guidance on the precise time to which a federal court should look to assess what was "clearly established Federal law, as determined by the Supreme Court." InWilliams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), Justice Stevens, writing for a majority of the court, stated: "The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." Id. at 390, 120 S.Ct. 1495 (Stevens, J., for the court) (emphasis added). In a separate opinion, Justice O'Connor, also writing for a majority of the court, stated that the phrase "clearly established Federal law, as determined by the Supreme Court" refers "to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." Id. at 412, 120 S.Ct. 1495 (O'Connor, J., for the court) (emphasis added); see also Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004); Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).
 For the purposes of the instant cases, it does not matter which formulation applies. The state of the law, as determined by the Supreme Court, did not materially change between the issuance of the state court decisions denying Petitioners' Apprendi claims and the date their convictions became final on direct review. All three cases were decided and became final between the time the Supreme Court decided Apprendi and the time it issued subsequent opinions interpreting Apprendi. See Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002); United States v. Cotton, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Although the district court's opinion in Brown erroneously states that the New York Court of Appeals denied leave to appeal on August 2, 2002, see 258 F.Supp.2d at 78, the actual date was August 2, 2001, see 96 N.Y.2d at 916, 758 N.E.2d at 659, 732 N.Y.S.2d at 633. Brown's ninety-day period in which to petition for a writ of certiorari expired in the fall of 2001. See 28 U.S.C. § 2101(d); Sup.Ct. R. 13.1.
 The universe of "clearly established Federal law, as determined by the Supreme Court of the United States" for the purpose of this appeal is therefore limited to Apprendi and the cases that preceded it.