■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VERE TONGE, Appellant. [678 NYS2d 41] —Judgment, Supreme Court, New York County (Bruce Allen, J.), rendered September 5, 1995, convicting defendant, after a jury trial, of four counts of rape in the first degree and two counts of endangering the welfare of a child, and sentencing him, respectively, to four terms of 4 to 12 years and two terms of 1 year, all to run concurrently, affirmed.

Defendant's challenges to the prosecutor's summation remarks are unpreserved for failure to object or to specify the basis for objection and we decline to review them in the interest of justice. Were we to review them, we would conclude that any error was harmless. The infant victim gave explicit and detailed descriptions of the sexual acts perpetrated upon her. Her testimony was credible and indicated a knowledge of sexual activity not normally possessed by a seven year old.

We agree with the dissenters that certain of the prosecutor's remarks during summation went beyond the bounds of fair comment on the evidence (*see, People v Aviles*, 176 AD2d 584, 585). However, while some of her statements "would be better left unsaid, there was no obdurate pattern of inflammatory remarks or of egregious and pervasive prosecutorial misconduct, warranting a new trial" (*People v Gonzalez*, 249 AD2d 24, 25, citing *People v D'Alessandro*, 184 AD2d 114, *lv denied* 81 NY2d 884). In the context of the entire trial, it is our considered opinion that the remarks were harmless error (*People v Galloway*, 54 NY2d 396, 401). Concur—Milonas, J. P., Nardelli and Rubin, JJ.

Rosenberger and Wallach, JJ., dissent in a memorandum by Wallach, J., as follows: Defendant was convicted, upon a jury verdict, of four counts of first-degree rape and related lesser charges. Because we find that defendant was denied a fair trial, we would reverse and remand.

This conviction rests almost entirely upon the detailed and remarkably coherent testimony of the victim, a child nine years of age at trial, who had been entrusted by her mother to defendant's care at various intervals during the previous two years. Defendant denied all wrongdoing when interviewed by

the police. In defendant's view, the victim's accusations were motivated by jealousy of his relationship with his son, who was her younger half brother.

The medical evidence in this case was inconclusive. The People's expert reached certain findings "consistent with" rape and abuse, but also conceded that what he observed could be the result of normal pubescent development and/or other innocent causation. A defense expert supported the latter view.

Called by the defense, defendant's longtime girlfriend described the circumstances of his arrest. She was with defendant in his apartment on a February night in 1994 when two detectives knocked at the door sometime between 12:30 A.M. and 1:30 A.M. Defendant refused to open the door and surrender until 8:30 in the morning, by which time he had called and secured an attorney.

In her summation (with our emphasis added), the prosecutor argued that

"from [the detectives and] from his witness * * * you know that the defendant knew the police were looking for him and you know he knew the police were outside his door the whole night and you know he chose to stay in his apartment and not respond to their requests to turn himself in.

"He may want you to believe he was looking for a lawyer and that's the only reason he didn't respond when the police came to get him, but his actions tell you that he's really the manipulative, conniving person. He turned himself in when he was good and ready.

"Are those actions the actions of an innocent man trying to set the record straight about what is being said about him or *are they the actions of a guilt ridden man who's trying to find a lawyer who's going to cover him?*"

Citing a portion of the testimony of the child's mother, the prosecutor continued to expound on the same theme:

"How did the defendant help prove his own guilt? Look at what he first said to [the child's mother] when she calls him to confront him the day she finds out her daughter said this man raped her. Does he say to [her], oh, my God, I love that little girl, I would never do that? No. Does he say, she's lying, you know she's always hated me? No. Does he say, I could never do a thing like that? No. Does he protest his innocence in any way? No. He says, *'I'm calling a lawyer.'*

"Did those words make sense to you as the *words of a guilty man* or do they make sense in the sense that the *child was telling the truth and he knew he needed a lawyer?* Use your common sense."

We are not ready to accept the proposition that the retention of a lawyer to represent a person accused of committing a serious crime, a right guaranteed by the Sixth Amendment to the United States Constitution, is to be laid before a jury as evidence of consciousness of guilt, especially when linked to the argument that an innocent man would seek out the police to "set the record straight." Such a pernicious course has been firmly rejected (*People v Conyers*, 52 NY2d 454, 458; *People v Von Werne*, 41 NY2d 584), as we have noted (*People v Carter*, 149 AD2d 83, 89-90): "The Court of Appeals has repeatedly pointed out that the probative value of the defendant's pretrial failure to speak when confronted by law enforcement officials is of extremely limited probative value [citations omitted]. This minimal probative value is far outweighed by the chilling effect the use of a defendant's pretrial silence or invocation of his right to counsel has on the exercise of these fundamental liberties."

While it is true that defendant did not note any objection to these remarks of the prosecutor, we think this issue should be reached in the interest of justice, as we did in *Carter (supra)*. Even though the People's over-all proof was sufficient to convict, the inflammatory nature of the charge itself presents all the more compelling a reason to require that the scales of justice be carefully balanced, and not tipped against defendant simply because he chose to exercise a fundamental right.

Another prejudicial error in the summation, which *was* fully preserved, arose when the prosecutor argued that defendant's conduct was "typical behavior of a sex offender * * * who works his way slowly from abuse to full-fledged rape." This comment finds no support in the record from the expert testimony or any other source. In this respect, the prosecutor became an unsworn witness, and the trial court's erroneous overruling of defendant's objection simply compounded the error (*People v Ashwal*, 39 NY2d 105; *People v Lovello*, 1 NY2d 436).