Victor CRUZ, Petitioner,

v.

Superintendent Gary FILION,
Respondent.

No. 03 Civ. 6980(VM).

United States District Court,
S.D. New York.

Oct. 5, 2006.

## DECISION AND ORDER

MARRERO, District Judge.

### I. BACKGROUND

By Order dated March 2, 2006, Magistrate Judge Douglas Eaton, to whom this matter had been referred for habeas corpus review, issued a Report and Recommendation (the "Report"), a copy of which is attached and incorporated herein, recommending that the Court deny the petition filed by petitioner Victor Cruz ("Cruz") pursuant to 28 U.S.C. § 2254 (the "Petition"). In a motion made on May 18, 2006 Cruz sought an extension of time to submit objections to the Report. By Order dated June 6, 2006, Chief Judge Michael B. Mukasey granted the request, extending the deadline until July 7, 2006, and indicating that no further extensions would be granted and that if no timely objections were submitted the Report would be adopted, provided it is not found clearly erroneous. Cruz has not filed any objections to the Report, although his time to do so expired on July 7, 2006. For the reasons stated below, the Court adopts the Report in its entirety.

### II. STANDARD OF REVIEW

A district court evaluating a Magistrate Judge's report may adopt those portions of the report to which no "specific, written objection" is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous. See Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Greene v. WCI Holdings Corp., 956 F.Supp. 509, 513 (S.D.N.Y. 1997). The Court is not required to review any portion of a Magistrate Judge's report that is not the subject of an objection. See Thomas, 474 U.S. at 149, 106 S.Ct. 466. A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. See DeLuca v. Lord, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); Walker v. Hood, 679 F.Supp. 372, 374 (S.D.N.Y. 1988).

### III. DISCUSSION

The Court finds that the facts set forth in the Report are supported by the record and are thus incorporated herein by reference. Having conducted a review of the full record, including, among other things, the parties' respective submissions in connection with the Petition, as well as the Report and applicable law, the Court concludes that the findings of fact, and the legal reasoning and authority supporting the recommendations made in Report are not clearly erroneous.

### IV. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Report and Recommendation of Magistrate Judge Douglas Eaton dated March 2, 2006 (Docket No. 14) is adopted in its entirety, and the petition of Victor Cruz ("Cruz") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket No. 2) is dismissed.

As Cruz has not made a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); *Lozada v. United States,* 107 F.3d 1011, 1014–16 (2d Cir.1997), *abrogated on other grounds, by United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997).

The Clerk of Court is directed to close this case.

**SO ORDERED.**

## *REPORT AND RECOMMENDATION TO CHIEF JUDGE MUKASEY*

EATON, United States Magistrate Judge.

The *pro se* habeas corpus petition of Victor Cruz challenges his conviction for Burglary in the Second Degree after a jury trial before Justice Jeffrey M. Atlas in Supreme Court, New York County. Cruz (born in 1959) had four prior felony convictions. (Tr. 39.)[1] From 1979 to 1991, he served prison terms for three burglaries, a robbery, and a battery. (Tr. 14–18.) On two occasions his parole was revoked,[2] and he absconded from a work release program in 1990. (Tr. 18, 21–22.) In the case at bar, the jury found Cruz guilty of a burglary committed on March 8, 1997. He had been on parole at that time. (Tr. 18.) On March 23, 1999, Justice Atlas ruled that Cruz was a persistent felony offender (S.10); given that status, he was sentenced to an indeterminate prison term of sixteen years to life.

Cruz was represented by attorneys from the Legal Aid Society—Mary Beth Anderson during the trial and sentencing, and Jeffrey I. Richman during appeal. On March 7, 2002, the Appellate Division unanimously affirmed the conviction. *People v. Cruz,* 292 A.D.2d 196, 738 N.Y.S.2d 213 (1st Dept.2002). On April 26, 2002, Associate Judge George Bundy Smith denied leave to appeal to the Court of Appeals. *People v. Cruz,* 98 N.Y.2d 636, 744 N.Y.S.2d 765, 771 N.E.2d 838 (Ct.App. 2002).

On November 6, 2002, Cruz filed a *pro se* motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10. (Exh. F.) On February 25, 2003, the motion was denied in an opinion by Justice Altas. (Exh. G.) Cruz made an application for leave to appeal that denial to the Appellate Division (Exh. H); on June 5, 2003, his application was denied (Exh. J).

On August 5, 2003, Cruz timely filed his habeas corpus petition with our Court's Pro Se Office. On October 27, 2004, Assistant District Attorney ("ADA") Morrie I. Kleinbart served a 16–page Memorandum of Law, annexing Exhibits A through J. On December 28, 2004, Cruz filed a two-page Reply Affirmation, which annexed a 13–page Memorandum of Law. On March 24, 2005, ADA Kleinbart filed the transcripts of the trial and the sentencing.

Raising the same two points raised on direct appeal by Legal Aid, Cruz's petition says:

Point I: Petitioner was denied his right to due process and a fair trial by the prosecutor, who, during opening and

---

1. I will refer to the transcript of the Sandoval hearing, jury selection and trial as "Tr.", and the sentencing transcript as "S.". I will refer to Assistant District Attorney Morrie I. Kleinbart's October 27, 2004 Memorandum of Law as "Resp. Memo."; it annexes Exhibits A through J, and I will refer to certain of those exhibits as "Exh. __."

2. Tr. 18 says that his parole was revoked on December 30, 1994 and on October 7, 1998. I believe that the latter date was a mistake, and that the correct date was probably October 7, 1988.

summation, inflamed the passions of the jurors by appealing to their religiosity, repeatedly invoking images of the crucifix and the church. [U.S. Const., Amends. V, VI, and XIV; N.Y. Const., Art. I, § 6]

Point II: Petitioner's sentence of sixteen years to life imprisonment as a persistent violent felony offender pursuant to Penal Law § 70.08 and Criminal Procedure Law § 400.16 violates his right to notice of the charges against him, a jury trial and due process of law, since the enhanced sentence was premised upon two predicate convictions the existence of which was neither contained in an indictment nor submitted to a jury. [U.S. Const., Amends. XI, XIV; *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)]

As a third point, Cruz repeats his § 440 motion's claim that his Legal Aid trial attorney provided ineffective assistance.

For the reasons stated below, I recommend that Judge Mukasey deny Cruz's habeas petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Elizabeth Klein testified as follows. She and her 14–year old son lived in an apartment on the third floor of the parish house of St. Luke's in the Fields Episcopal Church. (Tr. 422–23.) On March 8, 1997 at about 2:00 a.m., she awoke to the sound of a person rummaging through the rector's office, which was located one floor below. (Tr. 423.) She called the rector, Father Ferlo, at his nearby house, but his daughter said that he was sleeping. Ms. Klein then called 911 and said that she "thought somebody had broken in and was downstairs, and [she] gave the address." (Tr. 424–26.)

Police Officers ("P.O.") Christopher O'Hare, David Nedd, and Luigi Donofrio each testified. They and P.O. Robert Intartaglia arrived at the parish house about five minutes after the 911 call. (Tr. 385, 389, 426, 500–02, 583–84.) When the officers arrived, they buzzed Ms. Klein through the intercom and told her that they were not able to get in. Ms. Klein threw her keys down to one of the officers; she yelled that the intruder was banging on her door and apparently was trying to get inside her apartment. (Tr. 392–93, 427–28.) Officers O'Hare, Intartaglia, and Donofrio entered the building and saw a bag laying next to the front door. (Tr. 394, 504.) P.O. O'Hare heard banging coming from upstairs. He proceeded to the second-floor bathroom, where he saw a man in the process of climbing out of the window. P.O. O'Hare yelled, "Police! Don't move." The man, later identified as Cruz, continued climbing out of the window and onto the second-story roof. (Tr. 394–97, 493.) P.O. O'Hare radioed to the other officers that the man was "going out the back." (Tr. 397, 508.) P.O. O'Hare followed the man onto the roof, and he noted some stamps, coins, and religious artifacts lying on the roof. (Tr. 398–99.) The man jumped from the roof into the backyard. P.O. Nedd, who was in the backyard, yelled, "Police! Don't move." The man stopped and turned around; however, he gave P.O. Nedd "a little struggle" when the officer tried to handcuff him. After he was handcuffed, the man said several times that, "I was just taking a leak." (Tr. 400, 505–08, 511.) P.O. Nedd smelled alcohol on his breath. (Tr. 562.) The man was bleeding from his hands, and some of the blood got onto P.O. Nedd's hands. (Tr. 508–09, 511.) P.O. Donofrio came outside and asked the man, "Is there anyone else inside?" The man replied, "No." (Tr. 510, 589.) P.O. Donofrio then kept custody of the man and read him his Miranda warnings, while P.O. Nedd went inside the parish house to wash his hands. (511–12, 590–95.)

From the roof, P.O. O'Hare went back into the parish house and searched for any other intruders. He found none. (Tr. 495.) Father Ferlo arrived at the parish house. (Tr. 442.) P.O. O'Hare and Father Ferlo testified as follows. The locks on several doors had been broken. (Tr. 401–04, 444–47, 455–56, 490.) The following items were out of place: (a) silverware, which had been in an unlocked safe in the parish office, was now lying next to a paper bag on the first floor near the front door; (b) a small grandfather clock had been moved; (c) a very old "oil stock" used for baptisms had been moved; (d) a clock radio, a calculator, old prayer books and Bibles, a toy golden calf, an umbrella, clothing, and carpets had been moved to a corner of one of the second-floor offices and placed into shopping bags. (Tr. 401–06, 408, 411, 445, 447–49, 450–51, 454, 459, 479.) Blood stains were found on a file cabinet on the second floor. (Tr. 457.)

P.O. Nedd and P.O. Donofrio transported Cruz to the station house. (Tr. 519–50.) At the station house, P.O. Nedd showed Cruz a watch that P.O. O'Hare had found in the hallway outside Ms. Klein's third floor apartment. P.O. Nedd asked, "Is this your watch?" Cruz responded, "Yes, that's my watch." (Tr. 521–24.)

At trial, Officers Nedd and Donofrio identified Cruz as the man they arrested after he jumped from the second-floor roof. (Tr. 509–10, 588.)

Cruz did not testify. Ms. Anderson, Cruz's lawyer, called two witnesses on his behalf. Michelle Martinez testified that on the night in question, Cruz drank four bottles of malt liquor and took one of his brother's prescription pills, which she presumed to be Xanax. He walked out drunk at about 11:00 p.m. (Tr. 641, 645–48.) Dr. Morris Zedeck, called as an expert in pharmacology and toxicology, noted that at 6:41 a.m. (more than four hours after the arrest), Cruz's blood test showed .123 percent alcohol. Based on that test, and assuming that Cruz had been drinking a beverage containing 6% alcohol and had stopped drinking at 11:00 p.m., Dr. Zedeck testified that Cruz's blood at 2:00 a.m. would have contained .18 percent alcohol. A reading in the range of .15 to .20 typically means that the person may not be able to stand up straight. However, even at .20 a person would still be able to think and to make decisions, albeit with bad judgment. (Tr. 693, 719–25, 732–33, 741–42, 776–78.)

On summation, Ms. Anderson argued that Cruz was guilty only of trespass, because he had been so drunk that he lacked the intent to commit a crime when he entered the parish house. (Tr. 792–94, 798–820.) Justice Atlas instructed the jury on this topic at Tr. 865–68. The jury rejected her argument and found Cruz guilty of second-degree burglary. (Tr. 882.)

On March 23, 1999, Justice Atlas held a sentencing hearing. Ms. Anderson challenged one of Cruz's prior convictions (a 1986 guilty plea to burglary) on two grounds—(a) that the attorney had failed to investigate and was ineffective, and (b) that Cruz had allocuted only to the elements of a petit larceny, not a felony. (See Exh. A, p. 9.) Justice Altas denied her challenge and found that Cruz was a persistent felony offender. (S.2–10.) Given that finding, the minimum sentence was sixteen years to life, and that is what Cruz received. (S.18.)

## DISCUSSION

Point I. *Cruz's claim that he was denied due process and a fair trial because the prosecutor's opening and summation inflamed the passions of the jurors by repeatedly invoking images of the crucifix and the church*

Cruz's trial counsel did not object to any of the comments in the prosecutor's open-

ing and closing arguments. However, appellate counsel complained about the following portions.

In her opening statement, the prosecutor said:

But let me just start by saying this. This is a case about a burglar who got caught in the act. This defendant, Victor Cruz, broke into the St. Luke's of the Fields Episcopal Church's parish house. He broke into the parish house where Elizabeth Klein lived with her young son. He violated her privacy, he invaded the sanctity of her home and the church's parish house. He, a stranger, broke into the compound of the church of St. Luke's of the Fields, broke into the church's parish house, rummaged through the drawers, rummaged through a safe, played with antiques and religious artifacts all while crucifixes were hanging just above his head, while Elizabeth Klein, awakened from her sleep, listened in terror, and he was caught red-handed in the act.

... And again the evidence will show that it was this defendant, Victor Cruz, who violated the sanctity of the church compound and who had the audacity to try to steal from a church.

\* \* \* \* \* \*

... The parish house, you will hear, is an old house where the offices for the church personnel are located. And as you might expect in the offices belonging to a church, there are crucifixes displayed on the walls of all the rooms.

(Tr. 372–73, 376.)

In her summation, the prosecutor said:

Ladies and gentlemen, as you now know, this case was about or still is about the burglary of the home of a woman, a burglary in a complex of a house of God, and a home, right here,

just feet away from a church. Can't miss the church.

\* \* \* \* \* \*

... Just like the person crosses the street to get to the other side, although it may seem like a cliche, this defendant entered the church building to st[ea]l.

\* \* \* \* \* \*

... You can believe everything Ms. Martinez told you and it doesn't absolve him of what he did that night, and it doesn't support the fact that he didn't go into the church building to steal because, despite his use of alcohol, whatever it may have been, how ever many glasses or bottles of malt liquor he drank, the evidence shows that the defendant was able to formulate intent, and the alcohol did not prevent him from choosing to do what he did and making sure that he met his goals.

(Tr. 820, 828, 831.)

The Appellate Division rejected Cruz's argument that the prosecutor's opening statement and summation violated his rights. It held:

Defendant's challenges to the prosecutor's opening statement and summation are unpreserved and we decline to review them in the interest of justice. Were we to review these claims, we would find that in this case involving the burglary of a church's parish house and the theft of property that included religious articles, the prosecutor's brief, record-based references to the religious aspect of the crime were not inflammatory and did not deprive defendant of a fair trial (*see, People v. D'Alessandro*, 184 A.D.2d 114, 118–119, 591 N.Y.S.2d 1001, *lv denied* 81 N.Y.2d 884, 597 N.Y.S.2d 945, 613 N.E.2d 977).

*Cruz*, 292 A.D.2d 196, 738 N.Y.S.2d 213.

■ Pursuant to New York's contemporaneous objection rule, an objection

must be raised at trial to preserve it for appellate review. N.Y. CPL § 470.05(2); *People v. Nuccie*, 57 N.Y.2d 818, 455 N.Y.S.2d 593, 441 N.E.2d 1111 (N.Y.1982); *People v. Dordal*, 55 N.Y.2d 954, 956, 449 N.Y.S.2d 179, 180, 434 N.E.2d 248 (N.Y. 1982). By finding that the claim was unpreserved because trial counsel did not object to the comments, the Appellate Division based its denial on "adequate and independent state grounds." *Harris v. Reed*, 489 U.S. 255, 261–62, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989); *Simmons v. Mazzuca*, 2001 WL 537086, at *11 (S.D.N.Y. May 21, 2001) (Peck, M.J.) (citing cases on this point). "Under *Harris*, federal habeas review is precluded 'as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.'" *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir.1990). Hence, this issue cannot be considered on federal habeas review "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). To demonstrate "cause for the default," a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Gonzalez v. Sullivan*, 934 F.2d 419, 422 (2d Cir. 1991), *quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). To show "actual prejudice," a petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir.1994). To establish a "miscarriage of justice," a petitioner must demonstrate

that he is "actually innocent." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir.2001). On these three procedural hurdles, Cruz fails to meet his burden.

First. Cruz admits that "the prosecutor's improper comments went unobjected" (see petition p. 5), but he does not give any explanation as to why no objection was made at trial.

█ Second. Cruz fails to show "actual prejudice" as a result of the prosecutor's references to the church. At the very start, during jury selection, the trial judge himself had told the venire panel that the crime occurred at the parish house of a church. At Tr. 67, he said:

> This is what the District Attorney ... told me she expects the witnesses will prove, that in March of 1997 ... there was a parish house of a church known as St. Luke In The Fields.... And apparently the church rents [it] out. Two floors of the church at least are devoted at least to parish purposes and parish business purposes. But there is a third floor there that apparently is rented out as an apartment....

(Tr. 67.) And at Tr. 74–76, the trial judge asked the prospective jurors:

> "Do you think there is anything at all about that, about your knowledge of that church that would prevent you from being an open minded juror in this case?"

All the prospective jurors indicated that they would be open minded. It seems to have been unnecessary for the prosecutor to say that "crucifixes were hanging just above his head" (Tr. 373) and to say that the burglary occurred "in a complex of a house of God" (Tr. 820). On the other hand, it appears unlikely that these comments "had a substantial and injurious effect." This appearance is corroborated by the lack of objection from the defense attorney, who was able to hear the volume,

tone and intensity of these comments, and to view the jurors' reactions if any.

■ Third. Cruz fails to demonstrate that he is actually innocent. At page 11 of his memorandum, he claims that he "informed [defense] counsel that he had never entered the building at anytime." However, Cruz has submitted no evidence to support any notion that he had not entered the building. To the contrary, strong evidence showed that he had entered the parish house and that he was not blind drunk. The police observed him climb out the window onto the second story roof, then jump down to the backyard, and then have the wit to offer an excuse ("I was just taking a leak.").

Accordingly, Cruz cannot ask a federal court to review his Point I.

Point II. *The constitutionality of New York's persistent felony offender statute*

■ The crime in question, Burglary in the Second Degree, was a Class C felony that normally carried a maximum sentence of 15 years. However, because of Cruz's prior felony convictions, New York's Penal Law § 70.08 and Criminal Procedure Law § 400.16 exposed him to a minimum of 16 years to life and a maximum of 25 years to life. Justice Ronald Zweibel referred to this eight months before Cruz's trial:

Before we begin, I just think it's incumbent upon me to let the defendant know that he is facing 25 years to life on this count. He's offered 12 years to life although that is still an awful lot of time. He should understand that with a rather extensive record that I am told that he has, it's a good possibility that he may get significantly more than the 16 to life should he be convicted....

(6/11/98 Tr. 2.) As it turned out, Justice Atlas's sentence was 16 years to life, the minimum allowed for a persistent felony

offender. Subsequently, the U.S. Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* held that certain sentence-enhancing facts must be proved to a jury beyond a reasonable doubt—but not if the enhancing facts are prior convictions. Nevertheless, Mr. Richman's appellate brief, dated July 2001, cited *Apprendi* and argued that Penal Law § 70.08 and Criminal Procedure Law § 400.16 were unconstitutional.

The Appellate Division ruled:

Defendant's constitutional challenge to the procedure under which he was sentenced as a persistent violent felony offender is unpreserved for appellate review and, in any event, is without merit (*see People v. Rosen*, 96 N.Y.2d 329, 728 N.Y.S.2d 407, 752 N.E.2d 844, *cert denied* 534 U.S. 899, 122 S.Ct. 224, 151 L.Ed.2d 160).

*People v. Cruz*, 292 A.D.2d 196, 738 N.Y.S.2d 213 (1st Dept.2002). ADA Kleinbart's memorandum of law to me, at pages 9–10, cited four Southern District decisions upholding the constitutionality of New York's statutory framework concerning prior felony offenders.

More recently, on June 3, 2005, the same result was reached by the Second Circuit in *Brown v. Greiner*, 409 F.3d 523, 534–35 (2d Cir.2005). In *Alston v. Woods*, 04 Civ. 8017(WHP)(GWG), 2005 WL 3312818 (S.D.N.Y. Dec. 8, 2005), a Report and Recommendation by Magistrate Judge Gorenstein gives a thorough analysis of *Brown v. Greiner*:

The Second Circuit has recently ruled ... that a state court ruling upholding a sentence under New York's discretionary persistent felony offender statute is neither contrary to nor an unreasonable application of *Apprendi*. *See Brown v.*

*Greiner*, 409 F.3d 523, 534–35 (2d Cir. 2005); ...

\* \* \* \* \* \*

... [T]he *Brown* case held that the application of the persistent felony offender statute involves only a "vague, amorphous assessment of whether, in the court's 'opinion,' 'extended incarceration and life-time supervision' of the defendant 'will best serve the public interest' "—an inquiry *Brown* determined to be "something quite different from the fact-finding addressed in *Apprendi.*" 409 F.3d at 534–35. Thus, *Brown* concluded that *Apprendi* was not implicated by the persistent felony offender statute because no judicial factfinding was involved at all. Several days after the decision in *Brown*, the New York Court of Appeals in *People v. Rivera*, 5 N.Y.3d 61, 800 N.Y.S.2d 51, 833 N.E.2d 194, *cert. denied*, — U.S. —, 126 S.Ct. 564, 163 L.Ed.2d 473 (2005), reached the identical conclusion and reiterated that under the persistent felony offender statute *"no* additional fact-finding beyond the fact of two prior felony convictions is required." 5 N.Y.3d at 70–71, 800 N.Y.S.2d 51, 833 N.E.2d 194 (emphasis in original). Instead, *Rivera* holds, "the requirement that the sentencing justice reach an opinion as to the defendant's history and character is merely another way of saying that the court should exercise its discretion." *Id.* at 71, 800 N.Y.S.2d 51, 833 N.E.2d 194. *Alston*, 2005 WL 3312818, at \*4.

Accordingly, Cruz's Point II has no merit.

### Point III. *Ineffective assistance of trial counsel*

On November 6, 2002, Cruz filed a *pro se* § 440.10 motion alleging that he received ineffective assistance from trial counsel. (Exh. F.) In that motion, and in his papers before our Court, Cruz makes six complaints about Ms. Anderson:

(1) He disagreed with her trial strategy. In her closing statement, she used the fact that he was intoxicated to argue that he was guilty only of trespass, not burglary; he claims that he "had never entered the building at anytime," and that "counsel's theory of criminal actions ... were made up without first consulting with the petitioner," and that they were "all lies." He also complains that she "really had no given defense and made it up as trial proceeded, because counsel had not submitted an opening statement to the jurors." (Pet. Memo. pp. 9–10, 11, 13; Exh. F, pp. 1–3, 4–5; Tr. 814–16, 820.)

(2) Her closing argument acknowledged that the defense's only "personal" (non-expert) witness, Ms. Martinez, was nervous. He argues that this comment led the jury to conclude that Ms. Martinez's testimony was untruthful. (Pet. Memo. pp. 10–11; Exh. F, pp. 3–4; Tr. 802–07.)

(3) Ms. Anderson did not make any reference to the inconsistencies between P.O. Nedd's pre-trial and trial testimony. (Pet. Memo. p. 12, 13; Exh. F, pp. 5–6.)

(4) She convinced him not to take the stand in his own defense. (Pet. Memo. p. 13.; Exh. F, p. 2.)

(5) She "never asked for a trial order of dismissal, relating to the evidence or lack of, and only moved to set aside the verdict for failure to prove intent, being aware, that it was Counsel's closing statement alone which satisfied that element." (Pet. Memo. p. 12–13; Habeas Petition p. 6; Exh. F, p. 6; S. 2.)

(6) She failed to provide him with a copy of his hearing minutes. (Habeas Petition p. 6; Exh. F, p. 6.)

In an order dated February 25, 2003, Justice Atlas denied Cruz's motion and wrote:

> ... The defendant now files a motion pursuant to CPL § 440.10(1)(h) claiming that the judgement against him was obtained in violation of his constitutional right to effective assistance of counsel due to trial counsel's: 1) employing a strategy that was at odds with his claim of innocence, and 2) convincing the defendant that he should not testify on his own behalf.
>
> At trial, i[t] was proven that the defendant was caught in the process of burglarizing Saint Luke's parish house and apprehended by the police while still on the Church grounds. It was conceded that the defendant entered the parish house without permission, however due to his extreme intoxication, it was disputed that he had formed the requisite intent to burglarize the dwelling....
>
> As the defendant concedes in his papers, his trial counsel had a strategy. Therefore, the defendant has failed to demonstrate the absence of a strategy, and his retrospective disagreement with trial counsel's strategy will not suffice to prevail on a claim of ineffective assistance of counsel. (*People v. Rivera,* 71 N.Y.2d 705, 709, 530 N.Y.S.2d 52, 525 N.E.2d 698 [1988] ).

(Exh. G.)

On March 11, 2003, petitioner moved for leave to appeal to the Appellate Division. (Exh. H.) On June 5, 2003, Justice Joseph P. Sullivan denied leave. (Exh. J.)

The habeas statute, 28 U.S.C. § 2254(d), provides that habeas may not be granted with respect to any claim that was adjudicated on the merits in the State court, unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

I find that Justice Atlas's decision was entirely reasonable, as I will now explain.

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the U.S. Supreme Court held that a claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

■ With respect to the first component, "judicial scrutiny of counsel's performance must be highly deferential.' " *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. A court deciding an ineffectiveness claim must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.,* 466 U.S. at 690, 104 S.Ct. at 2066.

With respect to the second component, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. The defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068.

Using the *Strickland* guidelines, I will now discuss petitioner's six complaints against Ms. Anderson. I will discuss complaints 1, 4, and 5 under my heading of "Disagreement with trial strategy"; complaint 2 under my heading "Ms. Martinez's testimony"; complaint 3 as "Failure to impeach P.O. Nedd"; and claim 6 as "Failure to provide hearing minutes."

## A. *Disagreement with trial strategy*

 Since Ms. Anderson chose not to make an opening statement, Cruz asserts that she did not have a trial strategy, and that her trial strategy evolved as she heard the evidence against him. Cruz's assertion is contradicted by the fact that Ms. Anderson had the foresight, in advance of trial, to retain an expert in pharmacology and toxicology. Dr. Zedeck eventually gave testimony that gave Cruz his best chance to avoid a felony conviction. Ms. Anderson's summation argued that Cruz was guilty of a misdemeanor trespass, not a felony burglary, because he did not have the intent to steal when he entered the premises. She argued that he entered the premises solely to try to find a bathroom. (Tr. 798–99, 809–11, 814–16, 819–20.) If the jury had accepted this argument, then there was no burglary, even if he formed an intent to steal after entering the parish house. (Tr. 866–70.) Cruz argues that if he had been told beforehand what Ms. Anderson's strategy was, then he would have testified in order to "provid[e] the jurors with an explanation for being on that property," i.e., in the courtyard but allegedly never inside the building. (Pet.Memo. p. 13.) He doesn't tell us how he would explain away the rector's testimony about the displacement of various valuable items inside the building and the testimony about the property stuffed in bags, and about his climbing out the window, and about his bleeding hand and the bloodstains on the file cabinet, and about his admission that he owned the watch found in the hallway outside Ms. Klein's third-floor apartment. (In view of all the evidence, there was no chance of obtaining a trial order of dismissal.) In short, Cruz's alleged trial strategy is absurd, and Ms. Anderson's trial strategy was smart.

On top of all this, if Cruz had testified, he would have been subjected to cross-examination by the prosecutor about his prior theft-related felony convictions. (Resp.Memo. p. 15.)

## B. *Ms. Martinez's testimony*

 Michelle Martinez's testimony gave details about Cruz's use of alcohol a few hours before the incident at the parish house. This was in addition to the test of Cruz's blood at 6:41 a.m. (more than four hours after his arrest). Accordingly, Ms. Martinez's testimony created a firmer foundation for Dr. Zedeck's opinion testimony. On the other hand, Ms. Anderson realized that some jurors might have a negative reaction to Ms. Martinez because she lived with Cruz as a woman but she had been born as a man. (Tr. 31, 46–47, 212, 642–43.) As a savvy trial lawyer, Ms. Anderson raised Ms. Martinez's background during jury selection, and hence was able to have some prospective jurors excuse themselves who might well have been pro-prosecution in their general out-

look. (Tr. 212–14, 217, 292–94, 301, 345–50.)

In her closing argument, Ms. Anderson said:

> Ms. Martinez was clearly very nervous. Yet she endeavored to answer all the questions put to her, truthfully, honestly, completely, no matter if it was a question coming from me, her husband's lawyer, or from Ms. Stein, her husband's prosecutor.
>
> \* \* \* \* \* \*
>
> You can believe Ms. Martinez's testimony, folks you can look at which she had to say, you can remember how she said it. And in spite of the fact that she was very nervous, you know that she was doing her very best to present honest, truthful testimony to you.
>
> And the reason that you know that is because she tried very hard to listen to the questions and to give complete answers, and a few times she got confused. And she, you know, couldn't understand completely, and yet she was trying, she was trying to give the answers.

(Tr. 801–03.) This did not imply that Ms. Martinez was lying. On the contrary, it gave the jurors a reason (nervousness on the part of the witness) to excuse Ms. Martinez for her somewhat inconsistent and confusing testimony about the amount of alcohol consumed by Cruz.

### C. Failure to impeach P.O. Nedd

Cruz argues that Ms. Anderson provided ineffective assistance of counsel because she "never mentioned or made any reference towards the inconsistency in [P.O. Nedd's] difference in statements made at the hearing and trial." (Pet.Memo. p. 12.) Cruz is incorrect; Ms. Anderson did indeed impeach P.O. Nedd's trial testimony by bringing out some inconsistent statements that he had made during the pretrial hearing. (Tr. 539–40, 567–72, 779–81.)

### D. Failure to provide hearing minutes

Cruz argues that Ms. Anderson provided him with ineffective assistance because she "never provided [him] with a copy of his hearing minutes, even after continuous request[s], and letter[s], knowing those minutes were important to the defendant's pending appeal and later litigation[ ]." (Habeas Petition p. 6.) On this complaint, I agree with the respondent's memorandum:

> ... [C]ounsel's failure to provide petitioner with a copy of the minutes of the hearing certainly does not establish counsel's ineffectiveness. There is no requirement that counsel do so and a failure to provide a client with a copy of the minutes of a proceeding hardly falls below the level of professionalism expected of the reasonably competent attorney. Moreover, it is difficult to see how the result of the proceeding might have differed had petitioner had a copy of the minutes. Petitioner does not suggest what he might have done or suggested had he a copy of those minutes. In the absence of any such suggestion, petitioner simply cannot establish that he was prejudiced by this supposed failing.

(Resp.Memo. pp. 15–16.)

I note that Cruz is talking only about the hearing minutes. It seems clear that he had the trial minutes. In his § 440.10 motion to Judge Atlas, he says that he annexed as exhibits "the trial transcript pages relating to defendant's arguments," and he refers to those transcript pages in his § 440.10 affidavit. (Exh. F, pp. IV, 3–5.)

### CONCLUSION AND RECOMMENDATION

For the reasons stated above, I recommend that Chief Judge Mukasey deny Cruz's habeas petition.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy (*i.e.*, by March 21, 2006), by filing written objections with the Clerk of the U.S. District Court and mailing copies (a) to the opposing party, (b) to the Hon. Michael B. Mukasey, U.S.D.J. at Room 2240, 500 Pearl Street, New York, N.Y. 10007 and (c) to me at Room 1360, 500 Pearl Street. Failure to file objections within 10 business days will preclude appellate review. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), and 6(e). Any request for an extension of time must be addressed to the District Judge.

Mar. 2, 2006.